## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTHONY DEBLASIO<br>Plaintiff<br><br>v.<br>CENTRAL METALS, INC.; ROMA STEEL<br>ERECTION, INC; ABC Corporation #1-100<br>(fictitious); JOHN DOE #1-100 (fictitious)<br>Defendants | :<br>:<br>:<br>:    No.:<br>:<br>:<br>:    Civil Action<br>:<br>:<br>: |

## NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

Defendants Central Metals, Inc. and Roma Steel Erection, Inc., by and through their undersigned counsel, Pozzuolo Rodden, P.C., hereby file this Notice of Removal of State Court Civil Action from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2101-13 and styled as Anthony DeBlasio v. Central Metals, Inc., et al. (hereinafter "State Court Action"), to the United States District Court for the District of New Jersey, on the grounds that:

1.     On or about May 14, 2013 the plaintiff Anthony DeBlasio (hereinafter "Plaintiff") filed a Verified Complaint in the New Jersey Superior Court, Law Division, Camden County initiating the State Court Action.   A true and correct copy of the Verified Complaint and Summons are attached hereto, made a part hereof and marked Exhibit "A".

2.     On or about August 8, 2013, the Verified Complaint and Summons were served upon counsel for the defendants Central Metals, Inc. and Roma Steel Erection, Inc. Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b).

3.     The Plaintiff's Verified Complaint alleges violations of the "Central Metals/Roma Steel Defined Benefit Plan" (hereinafter "Plan"), which the Plaintiff alleges was established in

accordance with the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1002, *et seq.* (hereinafter "ERISA"), with the Internal Revenue Service Identification Number 22-2384551. See Exhibit "A".

4.     Count III of the Plaintiff's Verified Complaint specifically alleges that defendants Central Metals, Inc. and Roma Steel Erection, Inc. have violated ERISA and that the Plaintiff is entitled to damages under ERISA. See Exhibit "A".

5.     28 U.S.C. 1441(a) expressly provides for the removal of civil actions from State Courts to the United States District Courts and states:

> Generally. Except as otherwise expressly provided by Act of Congress, any civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such an action is pending.

6.     Pursuant to 28 U.S.C. § 1331, the United States District Courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."

7.     Accordingly, this Court has jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1331 since the Plaintiff's claims arise under federal ERISA law.

8.     Additionally, 29 U.S.C. § 1132(a)(1)(B) of ERISA provides that the participant or beneficiary of a Plan under ERISA may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

9.     In Aetna Health Care, Inc. et al. v. Davila, et al., 542 U.S. 200, 210 (2004) the Supreme Court of the United States held that if an individual could have at any time brought his

claims under ERISA and there is "no other legal duty that is implicated by defendant's action" then the individual's cause of action "is completely pre-empted by ERISA."

10.     The Court further held the defendant's "state cause of action fell 'within the scope of' ERISA…and are therefore are completely pre-empted by ERISA… and removable to federal district court." Id. at 214.

11.     In addition to his ERISA claim, the Plaintiffs' claims in the Verified Complaint contains New Jersey state law claims based upon the Defendant's alleged violations of the Plan, as follows:

        a.      Count I: Breach of Contract- the Plaintiff alleges that failed to provide him with benefits he was due under the Plan. See Exhibit "A" at ¶ 31;

        b.      Count II: Breach of the Covenant of Good Faith and Fair Dealing- the Plaintiff alleges the Defendants owed a duty of good faith and fair dealing to the Plaintiff based on the parties' bargaining positions in relation to the Plan. See Exhibit "A" at ¶ 35;

        c.      Count IV: Intentional Infliction of Emotional Distress- the Plaintiff alleges that the Defendant failed to pay him amounts under the Plan causing him emotional distress. See Exhibit "A" at ¶ 46;

12.     Based on the foregoing and pursuant to ERISA and Aetna Health Care, Inc., the New Jersey state law claims in the Plaintiff's Complaint are pre-empted by ERISA and, therefore, they are properly removable to this Court.

13.     Also attached hereto as Exhibit "B" is a true and correct copy of the Brief in Support of Order to Show Cause received by the undersigned counsel by facsimile from plaintiff's counsel on June 3, 2013.

14.     Also attached hereto as Exhibit "C" is a true and correct copy of the Order of the Honorable Anthony M. Pugliese, J.S.C. dated June 4, 2013 denying the plaintiff's Order to Show Cause and directing the Plaintiff to serve the Complaint in accordance with the New Jersey Rules of Court.

15.     Defendants Central Metals, Inc. and Roma Steel Erection, Inc. have provided written notice of this Notice of Removal of Civil Action to counsel of record for all parties, all known unrepresented parties and a true and complete copy of this Notice of Removal has been simultaneously filed in the State Court Action.

WHEREFORE defendants Central Metals, Inc. and Roma Steel Erection, Inc. hereby file this Notice of Removal of State Court Civil Action to remove the civil action now pending before the Superior Court of New Jersey, Camden County, Law Division, docket No. L-2101-13 to the United States District Court for the District of New Jersey at Camden, New Jersey.

Respectfully Submitted,
POZZUOLO RODDEN, P.C.

Date: September 4, 2013                    BY:   /s/ Judith P. Rodden
                                                 JUDITH P. RODDEN, ESQUIRE
                                                 LESLEY M. IBANEZ, ESQUIRE
                                                 1916 E. Route 70, Suite 6
                                                 Cherry Hill, New Jersey 08003
                                                 (856) 489-7730
                                                 Email:judy@pozzuolo.com
                                                 Attorneys for defendants Central Metals, Inc.
                                                 and Roma Steel Erection, Inc.

# EXHIBIT "A"

Law Offices
of
# STEPHEN J. BUIVIDAS
907 Berlin Road
Cherry Hill, New Jersey 08034

Telephone (856) 428-6336
Fax (856) 428-3448

MEMBER OF NJ AND PA BAR

August 7, 2013

**Via Certified Mail**
Pozzuolo Rodden, P.C.
Attention: Judith P. Rodden
1916 East Route 70 Suite 6
Cherry Hill, NJ 08003

RE:   Central Metals, Inc. et al v. Wells Fargo Bank, N.A., Successor to Wachovia
      Bank vs. Anthony DeBlasio
      Docket Number: L-1136-11

Dear Ms. Rodden:

     As we discussed, you indicated that you will accept service on behalf of your
clients Central Metals, Inc and Roma Steel Erection, Inc. I have enclosed the Complaint,
Summons and CIS which was previously provided to you in the Order to Show Cause.

     Should you not accept service on behalf of the named Defendants please advice
so I can have my courier serve the Defendants directly.

     Thank you.  I remain,

Very truly yours,

STEPHEN J. BUIVIDAS

Enc.

LAW OFFICES OF
STEPHEN J. BUIVIDAS
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorneys for plaintiffs

| | |
|---|---|
| ANTHONY DEBLASIO,<br><br>                                  Plaintiff,<br><br>                   v.<br><br>CENTRAL METALS, INC.; ROMA STEEL<br>ERECTION, INC.;<br>ABC Corporation #1-100 (fictitious);<br>JOHN DOE #1-100 (fictitious)<br><br>                             Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NUMBER L-2101-13<br>CIVIL ACTION<br><br><br><br><br>SUMMONS |

To:

Central Metals, Inc. and Roma Steel Erection, Inc. C/o Ms. Judy Rodden, Esquire, 1916 E. Route 70, Suite 6, Cherry Hill, NJ 08003

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

| Dated: July 1, 2013 | /s/ Jennifer M. Perez<br>Clerk of the Superior Court |
|---|---|
| Defendant to be Served: | Central Metals, Inc. and Roma Steel Erection, Inc. |
| Service Address: | 1916 E. Route 70, Suite 6, Cherry Hill, NJ 08003 |

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LEGAL SERVICES (609) 348-4200
LAWYER REFERRAL (609) 345-3444

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
LEGAL SERVICES (201) 488-0044
LAWYER REFERRAL (201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LEGAL SERVICES (609) 261-1088
LAWYER REFERRAL (609) 261-4862

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St
Camden, NJ 08103
LEGAL SERVICES (856) 964-2010
LAWYER REFERRAL (856) 964-4520

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LEGAL SERVICES (609) 465-3001
LAWYER REFERRAL (609) 463-0313

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., P.O. Box 615
Bridgeton, NJ 08302
LEGAL SERVICES (856) 451-0003
LAWYER REFERRAL (856) 692-6207

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LEGAL SERVICES (973) 622-0207
LAWYER REFERRAL (973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096
LEGAL SERVICES (856) 848-4589
LAWYER REFERRAL (856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LEGAL SERVICES (201) 792-6363
LAWYER REFERRAL (201) 798-2727

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LEGAL SERVICES (908) 782-7979
LAWYER REFERRAL (908) 236-6109

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Civil Courthouse
175 S. Broad St., P.O. Box 8068
Trenton, NJ 08650
LEGAL SERVICES (609) 585-6200
LAWYER REFERRAL (609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633
LEGAL SERVICES (732) 828-0053
LAWYER REFERRAL (732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House, 71 Monmouth Park
P.O. Box 1269
Freehold, NJ 07728-1269
LEGAL SERVICES (732) 431-5544
LAWYER REFERRAL (732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910
LEGAL SERVICES (973) 267-5882
LAWYER REFERRAL (973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LEGAL SERVICES (732) 240-3666
LAWYER REFERRAL (732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
LEGAL SERVICES (973) 278-9223
LAWYER REFERRAL (973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LEGAL SERVICES (856) 678-8363
LAWYER REFERRAL (856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LEGAL SERVICES (908) 685-2323
LAWYER REFERRAL (908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LEGAL SERVICES (973) 267-5882
LAWYER REFERRAL (973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LEGAL SERVICES (908) 353-4715
LAWYER REFERRAL (908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LEGAL SERVICES (908) 387-1835
LAWYER REFERRAL (908) 475-2010

**Appendix XII-B1**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**



| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

**ATTORNEY/PRO SE NAME**
STEPHEN J. BUIVDAS

**TELEPHONE NUMBER**
(856) 428-6336

**COUNTY OF VENUE**
Camden

**FIRM NAME (if applicable)**
LAW OFFICES OF STEPHEN J. BUIVIDAS

**DOCKET NUMBER (When available)**
L-2101-13

**OFFICE ADDRESS**
907 Haddonfield-Berlin Road
Cherry Hill, NJ 08034

MAY 14 2013

**DOCUMENT TYPE**
Complaint

**JURY DEMAND**   ☒ YES   ☐ NO

**NAME OF PARTY (e.g., John Doe, Plaintiff)**
ANTHONY DEBLASIO, Plaintiff

**CAPTION**
Anthony DeBlasio v. Central Metals, Inc., Roma Steel Erection, Inc., ABC Corporation #1-100, and John Does (#1-10)

**CASE TYPE NUMBER**
(See reverse side for listing)
599

**IS THIS A PROFESSIONAL MALPRACTICE CASE?**   ☐ YES   ☒ NO
IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

**RELATED CASES PENDING?**   ☒ YES   ☐ NO

**IF YES, LIST DOCKET NUMBERS**
Pennsylvania Civil Case NO. 12-8375

**DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?**   ☐YES   ☒ NO

**NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN**
☐ NONE
☒ UNKNOWN

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?**   ☒YES   ☐NO

**IF YES, IS THAT RELATIONSHIP**   ☒ EMPLOYER-EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)
☐ FAMILIAL   ☐ BUSINESS

**DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?**   ☐ YES   ☒ NO

**USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:**

**DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?**   ☐YES   ☒ NO
**IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:**

**WILL AN INTERPRETER BE NEEDED?**   ☐YES   ☒ NO
**IF YES, FOR WHAT LANGUAGE:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**ATTORNEY SIGNATURE:**

 SIDE 2 

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
151    NAME CHANGE
175    FORFEITURE
302    TENANCY
399    REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502    BOOK ACCOUNT (debt collection matters only)
505    OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
506    PIP COVERAGE
510    UM or UIM CLAIM
511    ACTION ON NEGOTIABLE INSTRUMENT
512    LEMON LAW
801    SUMMARY ACTION
802    OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)
999    OTHER (Briefly describe nature of action)

**Track II — 300 days' discovery**
305    CONSTRUCTION
509    EMPLOYMENT (other than CEPA or LAD)
599    CONTRACT/COMMERCIAL TRANSACTION
603    AUTO NEGLIGENCE – PERSONAL INJURY
605    PERSONAL INJURY
610    AUTO NEGLIGENCE – PROPERTY DAMAGE
699    TORT – OTHER

**Track III — 450 days' discovery**
005    CIVIL RIGHTS
301    CONDEMNATION
602    ASSAULT AND BATTERY
604    MEDICAL MALPRACTICE
606    PRODUCT LIABILITY
607    PROFESSIONAL MALPRACTICE
608    TOXIC TORT
609    DEFAMATION
616    WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617    INVERSE CONDEMNATION
618    LAW AGAINST DISCRIMINATION (LAD) CASES
620    FALSE CLAIMS ACT

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
156    ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303    MT. LAUREL
508    COMPLEX COMMERCIAL
513    COMPLEX CONSTRUCTION
514    INSURANCE FRAUD
701    ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
280    Zelnorm
285    Stryker Trident Hip Implants

**Mass Tort (Track IV)**

| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 279 | GADOLINIUM |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 271 | ACCUTANE | 282 | FOSAMAX |
| 272 | BEXTRA/CELEBREX | 283 | DIGITEK |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 275 | ORTHO EVRA | 286 | LEVAQUIN |
| 277 | MAHWAH TOXIC DUMP SITE | 601 | ASBESTOS |
| 278 | ZOMETA/AREDIA | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."
Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

LAW OFFICES OF
STEPHEN J. BUIVIDAS
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorneys for plaintiffs

MAY 14 2013

| ANTHONY DEBLASIO, | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| Plaintiff, | LAW DIVISION |
| | CAMDEN COUNTY |
| v. | DOCKET NUMBER L-2101-13 |
| | CIVIL ACTION |
| CENTRAL METALS, INC.; ROMA STEEL ERECTION, INC.; ABC Corporation #1-100 (fictitious); JOHN DOE #1-100 (fictitious) | |
| | VERIFIED COMPLAINT |
| Defendants. | |

## CIVIL ACTION

Plaintiff ANTHONY DEBLASIO, residing at 105 Robin Hood Lane, Aston, Pennsylvania, by way of Complaint against Defendants, states:

1.     Plaintiff ANTHONY DEBLASIO (hereinafter "Plaintiff" or "DeBlasio"), is an individual residing at 105 Robin Hood Lane, Aston, Pennsylvania.

2.     Defendant CENTRAL METALS, INC. (hereinafter "Defendant" or Central" is a corporation duly organized and existing under the laws of the State of New Jersey, authorized to do business and doing business at 1054 South Second Street, Camden, New Jersey 08103.

3.     Defendant ROMA STEEL ERECTION, INC. (hereinafter "Defendant" or "Roma") is a corporation duly organized and existing under the laws of the State of New Jersey, authorized to do business and doing business at 1051 Locust Street, Camden, New Jersey

08103.

4.    The true names, whether individual, corporate, associate or otherwise, of Defendants ABC

CORPORATION #1-100 (fictitious) and JOHN DOE #1-100 (fictitious), inclusive, are

unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff

reserves the right to amend this complaint to show their true names and capacities when

ascertained. Plaintiff is informed and believes, and based upon such information and belief

alleges, that each of the fictitiously-named Defendants is responsible in some manner for the

acts and occurrences herein alleged, and that Plaintiff's damages as herein alleged were

proximately caused by such Defendants.

5.    Plaintiff is informed and believes, and based upon such information and belief alleges, that

each Defendant is, and at all times herein mentioned was, the agent, employee or

representative of each and every other Defendant, and in doing the acts and things herein

alleged, was acting within the course and scope of such agency or employment and in such

representative capacity.

6.    Beginning in or about December 1, 1985, Plaintiff was employed by Defendants. His

employment continued until on or about approximately August 8, 2010, when Plaintiff was

terminated by Defendants, and was brought in as a Third Party Defendant based on allegations

of improprieties relating to Plaintiff's performance of his duties, which improprieties Plaintiff

denies. Said improprieties remain unsubstantiated.

7.    During the course of his employment with the companies, Plaintiff became eligible for, and

was offered participation in, the "Central Metals/Roma Steel Defined Benefit Plan"

(hereinafter the "Plan"). Pursuant to its terms, designated by IRS Identification Number 22-

2384551, Defendant Central serves as administrator of the Plan. A Summary Plan Description (sometimes referred to herein as the "SPD") , reflecting the most recent amendment to the Plan, is attached hereto, marked as Exhibit "1", and expressly incorporated herein by this reference.

8.     The Plan was established incident to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1002 *et seq.*, and is, by its terms, subject to said provisions.

9.     Plaintiff was designated by the Administrator to serve as a member of the Committee which assisted with management of the Plan, and remained in the employ of Defendants in part in reliance upon the expectation that he would eventually share in the benefits of the Plan.

10.    By the terms of the Plan, participants became partially vested after three years and fully vested within seven years, and were entitled to a year of service credit for all years worked between January 1, 1993 and December 31, 2007.  As a result of the foregoing, Plaintiff was fully vested in the Plan at the time of his separation from employment.

11.    The Plan provides for various payment options depending upon, for example, whether a participant remains employed until full retirement age, discontinues employment prior to attaining full retirement age, dies, or becomes disabled.

12.    Plaintiff is currently disabled, and has been deemed totally disabled by the Social Security Administration.

13.    As set forth in the Plan summary (Part 5(B)), a participating employee is entitled to receive Early Retirement Benefits at any time if his employment has ceased and he is considered to have a Total Disability. Furthermore, in accordance with the Plan, a participant who has been

deemed totally disabled by the Social Security Administration "will be considered to have a Total Disability" for purposes of receiving retirement benefits under the plan (Part 5(B)).

14.   The Plan provides participants with various benefit distribution options, one of which is a single, lump sum payment of accrued benefits (Part 6(B)).

15.   At various times since the termination of his employment, Plaintiff has requested payment, in a lump sum, of his accrued benefits under the Plan, and has provided defendants with proof of his Total Disability, including the fact that he has been deemed totally disabled by the Social Security Administration.

16.   Notwithstanding the foregoing, defendants have failed and refused to pay Plaintiff the benefits which he has duly requested, and to which he is entitled pursuant to the terms of the Plan and the requirements of ERISA.  By its terms, ERISA precludes the denial or deferral of benefits based upon claims or allegations which have been, or may be in the future, asserted against a Plan participant,

17.   Plaintiff, both orally and in writing, personally and through counsel, has sought the intervention of the United States Department of Labor (hereinafter the "Department").

18.   Plaintiff is informed and believes, and based upon such information and belief alleges, that the Department has communicated with defendants and their counsel in an effort to expedite Plaintiff's claim for benefits, has requested information relating thereto, and has specifically confirmed that Plaintiff's right to receive benefits cannot be precluded, offset, or in any way limited as a result of any claims, allegations or purported causes of action which Defendants may assert against Plaintiff.

19.   Notwithstanding the foregoing, Defendants have failed and refused, and continue to fail and

4

refuse, to remit to Plaintiff the benefits which are due and owing to him in accordance with the Plan.

20. In addition, while Plaintiff was in Defendants' employ, Defendants procured a policy of life insurance through Phoenix Home Life Mutual Insurance Company, being Number U014692 (hereinafter the "Phoenix policy"). Plaintiff was the named insured under said policy, and his survivors were the designated beneficiaries. The face amount of the policy, which remains in effect, is $100,000.00.

21. At some point, Plaintiff was made aware that the Phoenix policy was a so-called "split dollar insurance" policy, by the terms of which Plaintiff and Defendants each became obligated to pay a portion of the periodic premiums, and Defendants became entitled to receive reimbursement for portions of the policy paid by Defendants in the event that the policy benefit became payable or the policy was cashed out in the interim.

22. Plaintiff has paid in excess of $7000.00 in premiums since the inception of the policy in order to maintain the policy in effect.

23. Plaintiff has requested that the Plaintiff be named as sole owner of the Policy so he can ascertain a portion of the cash value to which he is entitled. At the request of Defendants, Plaintiff has provided written proof, through Phoenix Mutual Home Life Insurance Company, of the premium amounts paid by Plaintiff so that the respective amounts to which Plaintiff and Defendants are entitled can be readily ascertained.

24. Despite the foregoing, Defendants have failed and refused, and continue to fail and refuse, to name as sole owner of the Policy so he can ascertain a portion of the cash value to which he is entitled.

25. Plaintiff, both personally and though counsel, has diligently sought both the benefits due him under the Plan and the amounts due him pursuant to the Phoenix policy.

26. Plaintiff's efforts to resolve this matter without resort to litigation have been rebuffed by Defendants. By an email dated April 5, 2013 to Defendants' counsel, Plaintiff's counsel implored Defendants to resolve these matters expeditiously, and afforded Defendants the opportunity to avoid litigation. Attached hereto, marked as Exhibit "2" and expressly incorporated herein by reference, is a true and correct copy of the April 5. 2015 email from attorney Stephen Buividas to Defendants' counsel, Joe Pozzuolo.

27. As a result of Defendants' failure and refusal to remit to him the sums due under the Plan and the Phoenix policy, or even to determine the amounts due and payable there under, Plaintiff has sustained damages in an amount equal to the sums due and payable, the precise amount of which sums are presently unknown to Plaintiff, and which sums continue to accrue.

28. Plaintiff continues to suffer financial strain by reason of Defendants' wrongful withholding of the aforesaid sums, and is unable to meet personal expenses and obligations, or even to provide necessary medical care for himself and members of his family.

29. In addition, Plaintiff has suffered physical and emotional anguish and distress, in amounts to be determined at the time of trial, as a direct and proximate result of the foregoing conduct on the part of Defendants.

## COUNT 1

### (Breach of Contract)

30.  Plaintiff hereby incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

31.  Defendants, by their failure to identify and to remit to Plaintiff the amounts due and payable to him under the Plan, and by their failure to name Plaintiff as sole owner of the Policy so he can ascertain a portion of the cash value to which he is entitled, have breached their contractual obligations to Plaintiff.

32.  Plaintiff has fully performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the Plan and the Phoenix policy, except to the extent that his performance there under has been excused or rendered impossible of performance by the conduct of Defendants.

33.  As a result of the foregoing breaches Plaintiff has been damaged, as set forth above, in amounts to be determined at trial, but not less than the jurisdictional limits of the Court.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a)   Awarding Plaintiff monetary damages, including but not limited to all sums due him under the Defined Benefits Plan and the Phoenix policy, in an amount to be proved at the time of trial, together with interest thereon at the legal rate;

(b)   Awarding Plaintiff its costs of suit and reasonable attorneys' fees herein, and

(c)   Awarding such other and further relief as the Court may deem just and proper.

## COUNT II

### (For Breach of the Covenant of Good Faith and Fair Dealing)

34.   Plaintiff hereby incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

35.   By reason of the status of Defendants as Plaintiff's employers and as administrators and fiduciaries under the Plan, the inequality of bargaining position between Defendants and Plaintiff, and the confidentiality and trust with which Defendants were vested, Defendants owed Plaintiff a duty of good faith and fair dealing in connection with the aforesaid transactions.

36.   In doing the acts and engaging in the conduct herein alleged, Defendants have breached their duty of good faith and fair dealing which they owed to Plaintiff.

37.   In breaching their duty of good faith and fair dealing Defendants acted willfully, wantonly, and with malice and oppression toward Plaintiff.

38.   By reason of said willfulness, wantonness, malice and oppression by Defendants, Plaintiff is entitled to punitive and exemplary damages in an amount to be determined, but not less than $500,000.00, sufficient to punish said Defendants and deter them from engaging in the same or similar acts or conduct in the future.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a)   Awarding Plaintiff damages in an amount to be proved at the time of trial, together with interest thereon at the legal rate;

(b)   Awarding Plaintiff punitive and exemplary damages in an amount not less than

8

$500,000.00;

(c)    Awarding Plaintiff its costs of suit and reasonable attorneys' fees herein, and

(d)  Awarding such other and further relief as the Court may deem just and proper.

## COUNT III.

### (For Failure to Comply with ERISA)

39.    Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though the same were fully set forth herein.

40.    In failing to remit prompt and complete payment to Plaintiff of all sums due him under the Plan, or even to determine and inform Plaintiff of the amounts due him under said Plan, Defendants have failed and refused to discharge the statutory and fiduciary obligations imposed upon them by the provisions of ERISA.

41.    By reason of the foregoing, Plaintiff has been damaged in the manner and amounts aforesaid.

42.    In addition, Plaintiff has been damaged by the fact that it has become necessary for him, in order to enforce his rights, to engage counsel to pursue the rights and benefits to which he is entitled under ERISA.

43.    ERISA provides that a litigant may recover reasonable and necessary attorney's fees incurred in enforcing the rights and remedies afforded there under.

44.    As a result of the foregoing, Plaintiff is entitled to recover his attorney's fees reasonably

9

and necessarily incurred herein.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a)   Requiring Defendants to determine the amounts due and payable to Plaintiff under the plan and immediately remit said sums, together with such other damages as may be proved at trial, together with interest, to Plaintiff;

(b)   Awarding Plaintiff punitive and exemplary damages in an amount not less than $500,000.00; and

(c)   Awarding Plaintiff its costs of suit and reasonable attorneys' fees herein, together with such other and further relief as the Court deems just and proper.

## COUNT IV

### (For Intentional Infliction of Emotional Distress)

45.   Plaintiff hereby incorporates the foregoing paragraphs of this complaint as though the same were fully set forth herein.

46.   In failing to inform Plaintiff of the amounts due him and in failing and refusing to remit said amounts, Defendants deliberately directed extreme and outrageous conduct toward Plaintiff, intending thereby to produce or inflict emotional distress, or acted in deliberate disregard of the high degree of probability that such emotional distress would ensue.

47.   Said misconduct directly and proximately caused Plaintiff emotional distress that no reasonable person could or should reasonably be expected to endure.

48.   By reason of such conduct, Plaintiff is entitled to punitive and exemplary damages in an

amount to be determined, but not less than $500,000.00, sufficient to punish Defendants and to deter them from engaging in the same or similar acts in the future.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a) Awarding Plaintiff damages in an amount to be determined at the time of trial, together with interest thereon at the legal rate;

(b) Awarding Plaintiff punitive and exemplary damages in an amount not less than $500,000.00;

(c) For such other and further relief as the Court deems just and proper.

## Count V

### (For Negligent Infliction of Emotional Distress)

49.   Plaintiff hereby incorporates the foregoing paragraphs of this complaint as though the same were fully set forth herein.

50.   In failing to inform Plaintiff of the amounts due him and in failing and refusing to remit said amounts, Defendants negligently produced or inflicted emotional distress, or acted in negligent disregard of the high degree of probability that such emotional distress would ensue.

51.   Said misconduct directly and proximately caused Plaintiff emotional distress that no reasonable person could or should reasonably be expected to endure.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a) Awarding Plaintiff damages in an amount to be determined at the time of trial, together with interest thereon at the legal rate;

(b) For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

BY: _____
STEPHEN J. BUIVIDAS
Attorney for Plaintiff

DATED: __5/9/13__

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues herein

LAW OFFICE OF STEPHEN J. BUIVIDAS

BY: _____
STEPHEN J. BUIVIDAS, ESQUIRE
Attorneys for Plaintiff

12

## CERTIFICATION IN LIEU OF OATH FOR ANTHONY DEBLASIO

I, Anthony DeBlasio, certify that the statements contained in this certification are true. I understand that if any of the statements contained in my certification are willfully false, I am subject to punishment.

Dated: _May 1ˢᵀ 2013_

_Anthony DeBlasio_
Anthony DeBlasio

# SUMMARY PLAN DESCRIPTION

# FOR THE

# CENTRAL METALS/ROMA STEEL

# DEFINED BENEFIT PLAN

**EDITION DATE:   1/1/2008**

H/data/patw/central metals 2008 DB.spd.doc

# TABLE OF CONTENTS

INTRODUCTION

PART 1              GENERAL INFORMATION

PART 2              IMPORTANT PLAN DATES

PART 3              DEFINITIONS

PART 4              ELIGIBILITY FOR PLAN PARTICIPATION

PART 5              PLAN BENEFITS
                    (A)   BENEFIT AT NORMAL RETIREMENT DATE
                    (B)   DISABILITY RETIREMENT
                    (C)   DEFERRED RETIREMENT
                    (D)   DEATH BENEFIT
                    (E)   VESTED BENEFIT
                    (F)   FORFEITED BENEFITS

PART 6              BENEFIT PAYMENTS
                    (A)   COMMENCEMENT OF BENEFITS
                    (B)   METHODS OF DISTRIBUTION
                    (C)   TAXATION OF DISTRIBUTIONS

PART 7              PLAN MANAGEMENT AND CLAIMS PROCEDURE
                    (A)   PLAN MANAGEMENT
                    (B)   CLAIMS PROCEDURE

PART 8              MISCELLANEOUS
                    (A)   PLAN AMENDMENTS
                    (B)   PLAN TERMINATION
                    (C)   NO ASSIGNMENT OF PLAN BENEFITS

PART 9              YOUR LEGAL RIGHTS

## INTRODUCTION

This Pension Plan has been established by the Plan Administrator specified in Part 1(A) for the exclusive benefit of all Participants and their Beneficiaries.   Through this Plan, Participants accumulate benefits toward their retirement.   This is a DEFINED BENEFIT PLAN subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).

The purpose of this Summary Plan Description is to describe in general terms the primary features of this Plan.  The complete terms of the Plan and Trust are set forth in the Plan/Trust document, a copy of which may be obtained from the Plan Administrator.   In the event of any differences between this Summary and the provisions of the Plan/Trust document, the actual Plan/Trust document will govern.

## PART 1 - GENERAL INFORMATION

(A)  **Plan Administrator:**

Central Metals, Inc.
1054 South 2nd Street
Camden, NJ  08103

Telephone:  (609) 963-5844

(B)  **Participating Employers:**

Central Metals, Inc.
Roma Steel Erection, Inc.

(C)  **Federal Identification Numbers:**

Plan Administrator's IRS Identification Number: 22-2384551

Plan Identification Number:  004

(D)  **Plan Trustees:**

Joseph C. Giangulio

Address:  c/o Plan Administrator

(E)  **Committee Members:**

Joseph C. Giangulio
Anthony M. DeBlasio

Address:  c/o Plan Administrator

(F)  **Agent for Service of Legal Process:**

Joseph C. Giangulio

4

## PART 2 - IMPORTANT PLAN DATES

(A)  **EFFECTIVE DATE:**  January 1, 1998

    This is the date the Plan was established.  It is the earliest date that you could have become a Participant.

(B)  **PLAN YEAR:**  January 1st to December 31st

    This is the 12 consecutive month period used for maintaining the Plan's financial records.  It is also the period used for computing your Years of Service, Years of Participation and a Break in Service.

(C)  **VALUATION DATE:**  Each December 31st

    This is the date as of which your Normal Retirement Benefit and Accrued Benefit will be calculated and the date the Plan's assets are valued.

(D)  **NORMAL RETIREMENT DATE:**

    The LATER of your 65th birthday, or the 5th anniversary of your participation in the Plan.

(E)  **AMENDMENT DATE:**  March 19, 2008

    This Plan was last amended effective as of the above date and this Summary Plan Description (SPD) reflects the amended Plan provisions.

## PART 3 - DEFINITIONS

Your **ACCRUED BENEFIT** is that portion of your Normal Retirement Benefit which you have <u>earned</u> as of a given date. Your Accrued Benefit is determined by multiplying your Normal Retirement Benefit by a fraction, the <u>numerator</u> of which is your actual Years of Service on the <u>earlier</u> of your employment termination date <u>or</u> December 31, 2007 and the <u>denominator</u> of which is the number of Years of Service you would have completed as of your Normal Retirement Date. Your Accrued Benefit becomes payable on your Normal Retirement Date. The <u>maximum</u> Years of Service counted for purposes of the above fraction is <u>14</u> and does not include years prior to 1-1-93.

A **BREAK IN SERVICE** is a Plan Year in which you were credited with <u>less</u> than 501 Hours of Service.

Your **"EARLY RETIREMENT BENEFIT"** will be equal to your Accrued Benefit <u>reduced</u> for each full month that your benefit commencement date <u>precedes</u> your Normal Retirement Date. The reduction is determined as <u>follows</u>: 5/9th of 1% for each of the first 60 months that your benefit commencement date precedes your Normal Retirement Date; 5/18th of 1% for each of the next 60 months; and reduced actuarially (mathematically) for each additional month thereafter.

An **HOUR OF SERVICE** is an hour for which you are directly or indirectly compensated by the Employer, including compensation received as vacation pay, holidays, sick pay or otherwise.

Your **VESTED BENEFIT** is that portion of your Accrued Benefit that is non-forfeitable (owned by you). It is determined by multiplying your Accrued Benefit as of the Valuation Date of reference by the percentage shown next to your Years of Service under the vesting schedule appearing in Part 5(E). You will be 100% vested in your Accrued Benefit <u>regardless</u> of your standing on the Plan's vesting schedule upon the occurrence of any of the following events <u>prior</u> to your employment termination date <u>and</u> while an active Participant: upon reaching your Normal Retirement Date, upon qualifying for Disability Retirement, or upon your death.

A **YEAR OF PARTICIPATION** will be credited for each Plan Year in which you were a Participant <u>and</u> completed at least 1,000 Hours of Service.

A **YEAR OF SERVICE** is a Plan Year in which you were credited with at least 1,000 Hours of Service.

6

## PART 4 – ELIGIBILITY FOR PLAN PARTICIPATION

If you were a Plan Participant on or before December 31, 2007, your participation in the Plan will continue until you separate from service.

No employees of the Participating Employers will be admitted to the Plan after December 31, 2007.

## PART 5 - PLAN BENEFITS

**(A)   Benefit at Normal Retirement Date**

If you remain a Participant until your Normal Retirement Date, you will be entitled to receive a monthly benefit equal to the <u>larger</u> of your Accrued Benefit OR your "top heavy benefit" calculated as of the <u>earlier</u> of your employment termination date or 12/31/2007.

The following provisions of the Plan were used to calculate your Accrued Benefit:

The "Normal Retirement Benefit" was equal to $1/12^{th}$ of:

1.   36.6% of your Average Annual Compensation;

     PLUS

2.   6.5% of your Excess Compensation.

The total amount calculated under 1. and 2. above was reduced $1/10^{th}$ for each Year of Service that your total Years of Service at your Normal Retirement Date is less than 10.  Years of Service prior to 1-1-93 are <u>not</u> counted.

"Annual Compensation" was the total wages paid to you by the Participating Employers for the Plan Year of reference, <u>excluding</u> compensation above $225,000 (or such other compensation limit in effect for the Plan Year of reference).

"Average Annual Compensation" was determined as of the <u>earlier</u> of your employment termination date or December 31, 2007 and is (1) the average of your Annual Compensation for your highest three consecutive Years of Service selected from the last ten years, <u>or</u> (2) the average of your Annual Compensation for <u>all</u> Years of Service if you did not complete three Years of Service.

"Excess Compensation" was the portion of your Average Annual Compensation which exceeded the social security taxable wage base in effect for the Plan Year of reference.

If the Plan is top heavy (see Part 5(E) below), your "top heavy benefit" will equal 2% of your average compensation multiplied by your Years of Participation beginning 1/1/98 (up to a maximum of 10 years).

8

(B) <u>Disability Retirement</u>

In the event of your Total Disability while an Eligible Employee <u>and</u> Participant you will be entitled to receive your Accrued Benefit starting on your Normal Retirement Date. If you request that payment of benefits commence <u>prior</u> to your Normal Retirement Date, you will be entitled to receive your Early Retirement Benefit at any time <u>following</u> your employment termination date.
You will be considered to have a Total Disability if you suffer a physical or mental impairment which is likely to be permanent or could result in death rendering you incapable of performing your normal employment duties with the Employer. If you qualify for disability benefit payments under the Social Security Act, you will be considered to have a Total Disability. The Administrative Committee will require a written certification by a licensed physician selected by the Committee before granting disability retirement benefits.

(C) <u>Deferred Retirement</u>

If you remain in the employ of the Employer <u>after</u> your Normal Retirement Date, you may elect to receive payment of your Normal Retirement Benefit starting on your Normal Retirement Date, <u>or</u> you may elect to defer payment until the date you actually retire.

(D) <u>Death Benefit</u>

If your death occurs <u>before</u> you separate from service with the Employer <u>and</u> while you are an active Participant in the Plan, your beneficiary will be entitled to receive the Plan Death Benefit.

The PLAN DEATH BENEFIT will be equal to the lump-sum value of your Accrued Benefit <u>plus</u> the proceeds of any life insurance contracts purchased by the Trustees on your life. Any cash surrender value of a life insurance contract will be deducted from the lump-sum value of your Accrued Benefit.

If your death occurs <u>after</u> you separate from service with the Employer and <u>before</u> receiving any benefits from the Plan, your beneficiary will be entitled to receive the lump-sum value of your Vested Benefit.

If you are MARRIED at the time of your death, your Vested Benefit will <u>automatically</u> be paid to your spouse in the form of a lifetime pension UNLESS, with the written consent of your spouse, you selected another beneficiary.

You will be given a Beneficiary Form on which you must list your beneficiaries. It is advisable to review your beneficiary designation at least once a year and you should keep the Plan Administrator advised of any changes in your marital status.

9

(E)  **Vested Benefit**

If you separate from service with the Employer for any reason <u>other</u> <u>than</u> retirement or death, you will be entitled to the vested percentage of your Accrued Benefit when you attain your Normal Retirement Date.   The amount of your Vested Benefit is determined by multiplying your Accrued Benefit as of the Valuation Date by the percentage shown next to your total Years of Service under the <u>applicable</u> vesting schedule below:

| YEARS OF SERVICE | PERCENT VESTED |
|---|---|
| Less than 3 Years | 0% |
| After 3 Years | 20% |
| After 4 Years | 40% |
| After 5 Years | 60% |
| After 6 Years | 80% |
| After 7 Years | 100% |

If it is determined that the Plan is "top heavy" (as described below) for any Plan Year, the following schedule will be used to determine the amount of your Vested Benefit <u>instead</u> of the above schedule:

| YEARS OF SERVICE | PERCENT VESTED |
|---|---|
| Less than 2 Years | 0% |
| After 2 Years | 20% |
| After 3 Years | 40% |
| After 4 Years | 60% |
| After 5 Years | 80% |
| After 6 Years | 100% |

A Plan is considered "TOP HEAVY" if the total value of the Accrued Benefits of all "KEY EMPLOYEES" (certain officers/ stockholders) exceeds 60% of the value of all Accrued Benefits.   The vesting percentage indicated on your Annual Statement provided by the Committee will reflect the vesting schedule <u>in effect</u> for the Plan Year of reference.   If the Plan's status changes from top heavy to non-top heavy, your Vested Benefit <u>cannot</u> be reduced.

All Years of Service with the Participating Employers from January 1, 1975 will be counted for purposes of determining your vested percentage.

(F)  **Forfeited Benefits**

If you separate from service with the Employer and incur a Break in Service <u>before</u> you become <u>fully</u> vested in your Accrued Benefit, the non-vested portion of your Accrued  Benefit will be forfeited and applied towards satisfying the Employer's contribution required to be made on behalf of the other Participants for the Plan Year of reference.

10

## PART 6 - BENEFIT PAYMENTS

**(A)   Commencement of Benefits**

You do <u>not</u> have to file a claim for benefits upon retirement or other separation of service.  The Committee will advise you of the <u>earliest</u> date your Vested Benefit can be distributed to you.  No amounts are payable from the Plan <u>prior</u> to your Normal Retirement Date except in the event of your death or Disability Retirement.

Distribution of your Vested Benefit must begin after the close of the Plan Year in which occurs the <u>later</u> of your Normal Retirement Date <u>or</u> your employment termination date, unless you elect a later date.

**(B)   Methods of Distribution**

When you become eligible to receive your Vested Benefit, you will be permitted to elect the form in which it is to be paid.  The choices include a single sum payment, purchase of an annuity contract, installment arrangements and, <u>if eligible</u>, a <u>direct</u> rollover to an IRA or another employer's qualified plan that <u>accepts</u> rollovers.  However, if the lump-sum value of your Vested Benefit is $5,000.00 or less, the Trustee will <u>automatically</u> distribute it as a single sum payment.

If you are <u>not</u> married on the date your benefits are to begin and the lump-sum value of your Vested Benefit <u>exceeds</u> $5,000.00, it will <u>automatically</u> be paid in the form of a life annuity <u>unless</u> you elect, in writing, another form of payment before the life annuity payments are to begin.

If you are <u>MARRIED</u> on the date your benefits are to begin and the lump-sum value of your Vested Benefit <u>exceeds</u> $5,000.00, it will <u>automatically</u> be paid in the form of a Joint and 50% Survivor Annuity, <u>unless</u> you elect otherwise.  A "Joint and 50% Survivor Annuity" provides you with a monthly pension until your death, after which your spouse will receive 50% of the original monthly amount for the rest of her (or his) life.  You may elect, with the written consent of your spouse, <u>NOT</u> to have your Vested Benefit paid in the form of a Joint and 50% Survivor Annuity by electing another arrangement before such payments are to begin.

Additional information and Election Forms will be provided by the Committee when you or your beneficiary become eligible to receive payment of your Vested Benefit.

11

(C)   <u>Taxation of Distributions</u>

The Plan has been designed to meet Internal Revenue Service requirements for qualification and to take advantage of special tax treatment for qualified plans.  You will be taxed <u>only</u> when you actually receive benefits from the Plan.

The taxation of a Plan distribution depends on how <u>and</u> when your Vested Benefit is paid to you.  There are special Internal Revenue Service rules which may allow you to defer or reduce the amount of Federal income tax due on your distribution.  In addition to income tax, a 10% penalty tax may also be imposed on distributions you receive from the Plan <u>prior</u> to age 59 1/2.  It will be your responsibility to pay any penalty taxes that may be due as a result of a distribution from this Plan.

You or your beneficiary will be provided with information concerning the tax consequences of any distribution from the Plan <u>and</u> the Internal Revenue Service rules <u>in effect at that time.</u>  You should consult your own tax or financial advisor to determine the effect that a Plan distribution will have on your personal income tax situation and the tax consequences of such distribution.

12

## PART 7 - PLAN MANAGEMENT AND CLAIMS PROCEDURE

**(A)   Plan Management**

A **TRUST FUND** is maintained to receive Plan contributions from the Employer.   The Trust Fund is not part of the Employer or the Employer's assets.   Plan assets are used only for the purpose of providing benefits to Participants and/or their beneficiaries.

A **COMMITTEE** has been appointed by the Plan Administrator to manage the Plan and to determine all questions arising in the course of administering the Plan, such as eligibility for Plan participation, entitlement to benefits, the amount, form and time of payment of benefits.   The Committee also decides all claims for benefits and interprets the provisions of the Plan.

**TRUSTEES** are appointed to manage the Trust Fund.   They are responsible for the investment and safekeeping of Plan assets and for making payments to Participants or beneficiaries after their benefits have been approved by the Committee.

**(B)   Claims Procedure**

As a Plan Participant, you or your beneficiary do not have to file a claim for benefits.   However, if you feel your benefit has been incorrectly determined and you wish to request a review of that determination, you may file a written notice with any Committee Member.

The Committee will give you or your beneficiary written notice of its decision on review within 90 days of the filing of the request for review, unless special circumstances require an extension of time up to an additional 90 days.   If your claim is denied, this notice will (1) specify the reasons for denial, (2) refer to specific Plan provisions on which the denial is based, (3) describe any additional material or information necessary to perfect the claim, and (4) explain the review procedure.   You or your beneficiary may then appeal the Committee's decision by filing a written notice of appeal with the Committee within 60 days after your receipt of the notice of denial.   You or your beneficiary or any authorized representative may, before or after filing the notice of appeal, review any documents pertinent to the claim and submit issues and comments in writing.   The Committee will make its decision on the appeal within 60 days after their receipt of the appeal (unless special circumstances require an extension of time up to 120 days), and will give a written notice of its decision which specifies the reasons for its decision.   The Committee will decide whether a hearing will be held on the claim and will notify the claimant at least 14 days before the hearing, if one is to be held.

13

## PART 8 - MISCELLANEOUS

**(A)   Plan Amendments**

It may become necessary to amend certain parts of this Plan.   You
will be notified of any significant changes made to the Plan by the
Plan Administrator.   Your Vested Benefit cannot be reduced by any
revisions made to the Plan.

**(B)   Plan Termination**

The Plan Administrator expects to maintain this Plan indefinitely.
However, it does have the right to terminate the Plan at any time.
If such Plan termination occurs, Employer contributions to the Plan
will be discontinued and you will become 100% vested in your
Accrued Benefit.   No further benefits will be accrued or "earned"
by you.

Benefits under this Plan are insured by the Pension Benefit
Guaranty Corporation (PBGC) if the Plan terminates.   The PBGC
guarantees most Normal Retirement Benefits, Early Retirement
Benefits and certain disability and survivor's pensions.   However,
the PBGC does not guarantee all types of benefits and the amount of
benefit protection is subject to certain limitations.   The PBGC
guarantees vested benefits at the level in effect on the date of
Plan termination.   However, if the Plan has been in effect less
than five years before it terminates, or if benefits have been
increased within the five years before Plan termination, the entire
vested benefit or the benefit increase is not guaranteed.   In
addition, there is a ceiling on the amount of monthly benefit that
the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its
limitations, you may call the PBGC Office of Communications at
(202) 326-4000.   Written inquiries to the PBGC should be addressed
as follows:

>          Pension Benefit Guaranty Corporation
>          Office of Communications
>          1200 'K' Street, NW
>          Washington, DC   20005

14

(C)   <u>No Assignment of Plan Benefits</u>

Except as otherwise provided by law, your interest in the Plan either before or after retirement may not be anticipated, assigned or subject to attachment, garnishment, levy or other legal process, either voluntarily or involuntarily.  You may not transfer, use as security for a loan, or otherwise alienate your benefits under this Plan.   However, the Plan Administrator is required by law to recognize a qualified domestic relations order issued by a court that obligates you to pay child or spousal support or that allocates a portion of your benefits to your spouse, former spouse, child or other dependent.

## PART 9 - YOUR LEGAL RIGHTS

As a Participant in this Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that you are entitled to:

1. Examine, without charge, at the office of the Plan Administrator and at other designated locations, all Plan documents, including insurance contracts and copies of all documents filed by the Plan with the U.S. Department of Labor, such as annual reports and Summary Plan Descriptions.

2. Obtain copies of all Plan documents and other Plan information upon written request to the Committee. The Committee may make a reasonable charge for the copies.

3. Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish you with a copy of a Summary Annual Report (SAR).

4. Obtain once a year, a statement indicating your Accrued Benefit and the vested portion of your Accrued Benefit, or the earliest date on which your Accrued Benefit will become vested.

5. File suit in a federal court if any materials requested are not received within 30 days of your request, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. The court may require the Plan Administrator to pay you up to $100 a day until you receive the materials.

In addition to creating rights for Participants, ERISA imposes obligations upon the persons who are responsible for the operation of the Plan. These persons are referred to as "fiduciaries". Fiduciaries must act solely in the interest of the Participants and they must exercise prudence in the performance of their Plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the Plan. If the Plan fiduciaries are misusing the Plan's funds, you have a right to file suit in a federal court or request assistance from the U.S. Department of Labor. If you are successful in your lawsuit, the court may, if it so decides, require the other party to pay all legal costs, including attorney's fees.

The Plan Administrator or any other Employer participating in the Plan may not fire you or discriminate against you to prevent you from obtaining a benefit under this Plan or exercising your rights under ERISA. If you have any questions about this statement or your rights under ERISA, you should contact the Committee or the nearest office of the U.S. Labor-Management Services Administration, Department of Labor.

# EXHIBIT "B"

**LAW OFFICES OF**
**STEPHEN J. BUIVIDAS**
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorneys for plaintiff

| | |
|---|---|
| ANTHONY DEBLASIO, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION CAMDEN COUNTY |
| Plaintiff, | DOCKET NO. CIVIL ACTION |
| vs. | |
| CENTRAL METALS, INC.; ROMA STEEL ERECTION, INC.; ABC Corporation #1-100 (fictitious); JOHN DOE #1-100 (fictitious) | BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE |
| Defendant. | |

## I. INTRODUCTION

This brief is offered in support of the order to show cause presented by Plaintiff ANTHONY DEBLASIO.

## II. BACKGROUND FACTS

The details of this matter are set forth in the certification and verified complaint which accompanies this Order to Show Cause. Briefly stated, Plaintiff was employed for many years by Central Metals, Inc. ("hereinafter "Defendant" or "Central"), family-owned businesses located in Camden. After the death of the companies' owner, surviving family members accused Plaintiff of having defrauded the company in connection with various financial transactions. Plaintiff vehemently denies and has consistently contested those allegations, and none has ever been established or

1

substantiated. Nevertheless, Plaintiff was discharged from his employment, and now faces dire financial circumstances. He and his wife both have health problems. In fact, Plaintiff has been determined by the Social Security Administration to be totally disabled. Defendants have been apprised of Plaintiff's circumstances, and of his urgent need for money. Despite these hardships, Defendants have refused to pay him the benefits owed him from a defined benefit plan, established pursuant to ERISA, for which he was fully vested at the time of his termination. Defendant Central is designated by the Plan as its administrator. The Plan specifies that any vested former employee may receive disability benefits if, regardless of age, he is totally disabled, and specifically states that totally disability is established if, as is the case with Plaintiff, the Social Security Administration has confirmed that designation. Moreover, under ERISA, the plan and its administrator are absolutely precluded from denying benefits based on any alleged claims or offsets, including those of the type which Defendants have asserted against Plaintiff. Despite these circumstances, Defendants persist in withholding his payments from Plaintiff, and have not even verified the amounts due him. Plaintiff believes, however, that those amounts are substantial.

In addition to the amounts to which he is entitled as a vested participant in the Defined Benefits Plan, Plaintiff is entitled to a share of the cash value of a life insurance policy. The split dollar insurance policy named Plaintiff as the insured and his heirs as beneficiaries. Plaintiff eventually was made aware that, under the policy, Defendants would be responsible for paying a portion of the premium and Plaintiff would pay the balance, and that if Plaintiff passed away or the policy was cashed in, Defendants would receive a reimbursement of amounts paid in premiums from the proceeds of the policy or

the cash out. Plaintiff seeks the cooperation of Defendants in cashing out the policy since he needs the funds which will be payable once the cash out occurs. However, Defendants have dragged their feet, claiming, for example, that they need confirmation of the premium amounts paid by Plaintiff before agreeing to cash out the policy and divide the proceeds. Plaintiff has provided written proof, directly from the insurance carrier, of the precise amount he has paid in premiums. Despite the fact that Plaintiff met Defendants' objection to his request for the policy to be cashed out, Defendants still refuse to cooperate so that both parties can receive their share of the paid policy premiums. In short, Defendants seem to be doing everything possible to avoid letting Plaintiff receive any funds from any source since they know that he is suffering financially and will continue to do so until Defendants choose to cooperate.

Plaintiff has exhausted every effort to avoid litigation, but has constantly been rebuffed. His counsel recently wrote to Defendants' counsel, recounting past efforts to resolve the matter, and reluctantly informing counsel that litigation would ensue absent an immediate display of good faith. Since no relief is in sight without judicial intervention, Plaintiff submits this urgent plea.

### III. LEGAL ARGUMENT

#### A. THE STANDARD FOR RELIEF

In this case, Plaintiff seeks immediate affirmative relief. Although that relief is more in the nature of a directive to act, as opposed to merely an injunction to preclude an ongoing activity, Crowe v. DeGioia, 90 N.J. 126 (1982) sets forth the applicable criteria. For preliminary injunctive relief, an applicant must demonstrate that:

1. Absent a preliminary injunction, the applicant will suffer irreparable harm;

3

2. That the applicant's claim is based upon a settled legal right;

3. That material facts are not in dispute; and

4. That, if injunctive relief is denied, the applicant will suffer greater hardship than the harm that applicant's opponent shall suffer if the relief sought is granted.

Id., at 132-134.

### B. UNLESS THE COURT ISSUES THE RELIEF SOUGHT, PLAINTIFF WILL INEVITABLY SUFFER IRREPARABLE HARM

In this case, Plaintiff is already suffering irreparable harm. He is unable to meet his ordinary expenses, and is becoming more deeply indebted with each passing day. His health and lifestyle, and that of his family, have already been compromised, and their situation grows more dire every day. If he does not receive his money soon, he may lose his house, may be forced to file for bankruptcy, or may simply be unable to survive. In short, it is impossible to overstate the extent of Plaintiff's need, and the potential for irreparable harm. Defendants have never stated that they will never pay Plaintiff his benefits or allow the policy to be cashed out. Instead, they seek to extend the harm to Plaintiff for as long as possible, thus insuring that such harm will prove irreparable by any definition.

### C. PLAINTIFF'S RIGHT TO RELIEF IS WELL SETTLED

Defendants are not even disputing Plaintiff's right to these funds. They do not contend that he is not fully-vested. They cannot seriously dispute the extent of his disability since the Social Security Administration has validated his status as totally disabled, and the Plan documents expressly state that such confirmation is dispositive.

They are aware that ERISA absolutely precludes them from denying Plan benefits based on any other claims, real or imagined, which Defendants may have against Plaintiff, regardless of the nature of those claims. Therefore, Plaintiff's legal right to the relief sought is well settled. As the court held in State v. East Shores, Inc., 131 N.J. Super. 300 (Ch.Div. 1974), *appeal after remand*, State v. East Shores, Inc., 154 N.J. Super. 57 (Ch.Div. 1977), *aff'd and modified*, State v. East Shores, Inc., 164 N.J. Super. 530 (app. Div. 1979):

> [e]quitable remedies 'are distinguished for their flexibility,
> their unlimited variety, their adaptability to circumstances,
> and the natural rules which govern their use. There is in fact
> no limit to their variety and application; the court of equity has
> the power of devising its remedy and shaping it to fit the changing
> circumstances of every case and the complex relations of all the parties.'
> Id., at 310.

In this case, there is nothing complicated or unique about the relief sought. Plaintiff merely seeks a determination of the amounts owed to him under the Plan, as well as under the insurance policy, and the immediate payment of those amounts to him.

### D. MATERIAL FACTS ARE NOT IN DISPUTE THAT MIGHT PRECLUDE RELIEF

No material facts are in dispute. Plaintiff is entitled, by the terms of the Plan, to his benefits, and is entitled to have the insurance policy solely placed in Plaintiff's name as owner. There is no basis for denying the plan benefits. Even the previous "factual issues" raised concerning the amount paid by Plaintiff as insurance premiums has been

5

resolved by the independent third party best able to verify that information. Therefore, there is no factual dispute which could warrant denial of Plaintiff's application for relief.

## E. IF RELIEF IS DENIED, PLAINTIFF WILL SUFFER GREATER HARDSHIP THAN THE HARM WHICH DEFENDANT WILL SUFFER IF THE RELIEF SOUGHT IS GRANTED

When viewing the relative hardships of the parties, it is apparent that Plaintiff stands to suffer the greater harm from a delayed outcome. With each passing day, he suffers more and more. Defendants, on the other hand, will suffer no long-term harm, but more importantly will suffer no short-term harm if the application for immediate relief is granted. Presumably, if it has been handled in the usual and proper manner, the money in the defined benefit plan does not really even belong to Defendants. The benefit sought by Plaintiff will presumably be paid from trust fund monies belonging to the Plan, i.e., from money which has been earmarked for Plan participants for many years. By taking his money early because of his disability, Plaintiff will receive a reduced overall benefit.

The money to be derived from cashing the insurance policy will actually provide Defendants with money not presently, or perhaps ever, available to them otherwise. They will receive a windfall since, if the policy were simply permitted to lapse instead of redeemed for cash, neither Plaintiff nor Defendants would ever receive any return. Therefore, the funds generated by cashing the policy will be a windfall for Defendants, albeit a modest one, and will not result in any type of harm. In summary, the "harm" to Defendants if immediate relief is granted is non-existent, but the harm to be suffered by Plaintiff, if Defendant's non-compliance is permitted to continue, will be nothing short of

6

disastrous. The relief sought is not overly broad. It is simple and specific, and merely requires Defendants to perform duties which they are already obligated to undertake.

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter the relief requested.

DATED: 5/9/13

STEPHEN J. BUIVIDAS
Attorney for Plaintiff

7

**LAW OFFICES OF**
**STEPHEN J. BUIVIDAS**
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorneys for plaintiffs

| | |
|---|---|
| ANTHONY DEBLASIO | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| | CAMDEN COUNTY |
| Plaintiff, | L-2101-13 |
| vs. | DOCKET NO. |
| | CIVIL ACTION |
| CENTRAL METALS, INC.; ROMA STEEL | |
| ERECTION, INC.; | |
| ABC Corporation #1-100 (fictitious); | |
| JOHN DOE #1-100 (fictitious) | |
| | |
| Defendants | CERTIFICATION OF ANTHONY |
| | DEBLASIO |

## CERTIFICATION OF ANTHONY DEBLASIO

1.  I, Anthony DeBlasio, am the Plaintiff in the within matter and the party on whose behalf this Order to Show Cause is submitted.

2.  I was employed by Defendants herein Central Metals, Inc. ("Central" or "Defendant") from on or about December 1, 1985 until on or about April 30, 2010 on which I became permentaly disabled. On or about August 8, 2010 I was terminated from my job by Central Metals, Inc. The Defendants are related, family-owned businesses which were operated by my friend, Joseph C. Giangulio, prior to his death. I was employed as controller, and performed various financial duties consistent with that title.

1

3.  I am making this certification in support of the Order to Show Cause that my attorney is filing in this matter.

4.  Not long after Mr. Giangulio passed away, I was terminated from my employment by surviving members of his family. I was eventually accused of various financial improprieties relating to my employment. Mr. Giangulio was aware of my activities during his lifetime and, significantly, never accused me of any type of impropriety.

5.  During the course of my employment, the companies formed a Defined Benefit Plan under ERISA. I not only was a Plan participant but was, along with Mr. Giangulio, selected to serve on the committee designated to manage the Plan. Therefore, I developed a thorough knowledge of the Plan and its terms. Defendant Central was designated as the Plan administrator.

6.  During the course of my employment, Defendants purchased a life insurance policy from Phoenix Home Life Mutual Insurance Company ("Phoenix"). I was the named insured in the policy, and my heirs were the designated beneficiaries. I eventually was made aware of the fact that the policy was a so-called split dollar insurance policy, meaning that the company and I each paid a portion of the premiums, with the company reserving the privilege of receiving reimbursement for its premium payments once I died or the policy was cashed in. The arrangement eventually changed, and thereafter I was required to pay all the premiums.

7.  Following my termination, I sought to collect my benefits under the Plan, and to have sole ownership of the Phoenix policy. However, I have been unable to

collect any of the Plan benefits or be named as sole ownership of the Policy. Defendants have refused to pay me my Plan benefits, and have thwarted my efforts to be named sole owner.

8.    As to the insurance policy, the company refused to consent to my request to collect the cash value of the policy because it claimed that it could not determine the amount that I had paid in premiums. I provided written proof, from Phoenix, of the precise amount which I had paid. A true and correct copy of that correspondence is attached hereto, marked as Exhibit "A" to this certification. Even though I was able to overcome the hurdle which Defendants had placed in my way by providing the only information needed in order to determine how the cash value of the policy should be distributed, the company continues to thwart my efforts by refusing to allow me to become sole owner of the Policy so I can, if I decide, to withdrawal partial cash in the future.

9.    A copy of the Summary Plan Description ("SPD") for the Defined Benefit Plan is attached as an exhibit to the Complaint in this matter. By the terms of the Plan, I am a fully-vested former employee. I am also totally disabled, a fact which has been substantiated in writing by the Social Security Administration. The Plan provides that such a determination by the Social Security Administration is conclusive proof, for Plan purposes, that I am disabled and therefore entitled to receive disability retirement benefits under the Plan.

10.   For more than a year, I have been trying to collect my benefits from the Plan, but Defendants have not apprised me of the amount of my benefits, paid me anything, or specified a date when they will begin doing so. Recently, in fact, they

3

informed my attorney that they may not make a determination of any kind until July of this year, or perhaps even later! I am entitled to receive my benefits in a single lump sum, and seek such a payment. I have contacted the Philadelphia Regional Office of the United States Department of Labor, which has tried to intervene on my behalf. The Department has confirmed that, under ERISA, Defendants have no right to refuse me benefits based on any claims they may allege against me, including the improprieties which they have asserted. Because of Defendants' lack of cooperation, I have had to incur legal expenses, and ultimately was forced to file this lawsuit as a last resort. As recently as early this month, my counsel was still seeking an amicable resolution of this matter, and sent an email in which he reluctantly threatened litigation unless Defendants resolved this matter immediately. A true and correct copy of the email which my attorney, Stephen Buividas, sent to Defendants' counsel, Joseph Pozzuolo, on April 5, 2013, is attached as an exhibit to the Complaint in this matter. On or about April 22, 2013, long after I had originally requested a lump sum payment of all sums due me under the Plan, my attorney received an unsigned, undated "Memo" from Mr. Pozzuolo stating that defendants need an additional ninety (90) days, until July of 2013, at which time they "might" render a determination as to whether or not to pay me my benefits.

11.     This lawsuit is the culmination of more than a year of frustrating, and ultimately fruitless, attempts to persuade Defendants to pay me the benefits due me under the Plan. I am disabled, my wife has health issues and recently underwent surgery, and I am frankly unable to pay my bills as they become due, or to provide for my

family. There is a strong possibility that we will not be able to preserve our house if I do not receive my Plan benefits. I have considered bankruptcy as one of the few options available to me, but would like to avoid such a course if possible. Every day I am closer to the brink, and need my Plan benefits to live on. Significantly, Defendants have never told me that they intend to refuse to pay me my benefits. It appears that they are just delaying that payment, and the relatively modest amount I would received if the insurance policy were cashed in, precisely because they know that my family and I are in dire economic straits and suffering more each day. Therefore, I respectfully urge the Court to grant me the relief which I urgently seek.

# EXHIBIT "C"

**LAW OFFICES OF
STEPHEN J. BUIVIDAS**
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorney for plaintiff



ANTHONY DEBLASIO

Plaintiff,

vs.

CENTRAL METALS, INC.; ROMA STEEL
ERECTION, INC.;
ABC Corporation #1-100 (fictitious);
JOHN DOE #1-100 (fictitious)

Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
CAMDEN COUNTY

DOCKET NO. L-2101-13

CIVIL ACTION

ORDER TO SHOW CAUSE

PURSUANT TO RULE 4:52

THIS MATTER being brought before the Court by Stephen J. Buividas, attorney for plaintiff, seeking relief based upon the Brief and the facts set forth in the verified complaint and certification filed herewith, and it appearing that immediate and irreparable damage will probably result before notice can be given and a hearing held and for good cause shown:

1.     It is on this _____3_____ day of June 2013, ORDERED that Defendants CENTRAL METALS, INC. and ROMA STEEL ERECTION, INC. appear and *by Telephone Conference* show cause before the Superior Court Law Division at the Camden County Courthouse in Camden, New Jersey at __3 PM__ o'clock or as soon thereafter as

1

counsel can be heard, on the _____4_____ day of _JUNE_, 2013, why an

Order should not be issued preliminarily enjoining and restraining defendant

Division from:

A.   Failing or refusing to determine the amount of benefits due Plaintiff

ANTHONY DEBLASIO under and pursuant to the Central Metals/Roma Steel

Defined Benefit Plan;

B.  Directing said Defendants to remit forthwith to said Plaintiff the full amount

of all such benefits due under and pursuant to said Plan;

C.  Failing or refusing to name Plaintiff as sole owner of the Policy, issued by

Phoenix Home Life Mutual Insurance Company being number U014692, insuring

the life of Plaintiff;

D.  Directing Defendants forthwith to name Plaintiff as sole owner of the Policy;

E.  Granting such other relief as the court deems equitable and just.

And it is further ORDERED that:

2.   Defendants may move to dissolve or modify the temporary orders or restraints

herein contained on two (2) days notice to Plaintiff's attorney.

3.   A copy of this order to show cause, brief, and any supporting affidavits or

certifications submitted in support of this application shall be served upon counsel

for Defendants, Joseph Pozzuolo, via _____,

within _____days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-

4, this being original process.

4.   Plaintiff must file with the Court Plaintiff's proof of service of the pleadings on

Defendants no later than three (3) days before the return date.

5.    Defendants shall file and serve a written response to this order to show cause and

the request for entry of injunctive relief and proof of service by

_____. The original documents must be filed

with the Clerk of the Superior Court in the county listed above. A list of these

offices is provided. You must send a copy of your opposition papers directly to

Judge_____, whose address is Courtroom _____,

_____You must also send a copy of your opposition

papers to Plaintiff's attorney, whose name and address appears above, or to the

Plaintiff, if no attorney is named above. A telephone call will not protect your

rights; you must file your opposition and pay the required fee of $ _____ and

serve your opposition on your adversary, if you want the court to hear your

opposition to the injunctive or other relief Plaintiff is seeking.

6.    Plaintiff must file and serve any written reply to Defendants' order to show cause

opposition by _____. The reply papers must be

filed with the Clerk of the Superior Court in the county listed above and a copy of

the reply papers must be sent directly to the chambers of

Judge_____, whose address is Courtroom _____,

_____.

7.    If Defendants do not file and serve opposition to this order to show cause, the

application will be decided on the papers on the return date and relief may be

granted by default, provided that Plaintiff files a proof of service and a proposed

form of order at least three days prior to the return date.

3

8. If Plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the Court no later than three (3) days before the return date.

9. The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the Court and parties are advised to the contrary no later than ___ days before the return date.

J.S.C.

DATE: __6/4/13__                    Anthony M. Pugliese, J.S.C.

The Temporary relief sought is denied by the court as there is no showing of irreparable harm as required by Crowe J DeGioia. The parties appeared telephonically on the record Stephen Buivions for the plaintiff & Judith Roder for defendants.

Plaintiff will serve the complaint as per rule & upon service Defendants will respond in accordance with the Rules and Discovery will commence. Further reasons set forth on the record.

Anthony M. Pugliese, J.S.C.

4