**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANTHONY DEBLASIO | : | |
| Plaintiff | : | |
| | : | No.: |
| v. | : | |
| CENTRAL METALS, INC.; ROMA STEEL | : | |
| ERECTION, INC; ABC Corporation #1-100 | : | |
| (fictitious); JOHN DOE #1-100 (fictitious) | : | |
| Defendants | : | |

## NOTICE OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

TO:   Stephen J. Buividas, Esquire
      Law Offices of Stephen J. Buividas
      907 Haddonfield-Berlin Road
      Cherry Hill, NJ 08034

**PLEASE TAKE NOTICE** that the defendants Central Metals Inc. and Roma Steel Erection, Inc. are requesting oral argument as soon as counsel can be heard, when defendants Central Metals, Inc. and Roma Steel Erection, Inc., will move this Court, at the United States Courthouse located at the Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, New Jersey, for an order dismissing this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

POZZUOLO RODDEN, P.C.

Date:   September 4, 2013      BY:   __/s/ Judith. P. Rodden_____
                                     JUDITH P. RODDEN, ESQUIRE
                                     1916 East Route 70, Suite 6
                                     Cherry Hill, New Jersey 08003
                                     Telephone: (856) 489-7730
                                     Email: judy@pozzuolo.com
                                     Attorneys for defendants Central Metals, Inc. and
                                     Roma Steel Erection, Inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY DEBLASIO<br>Plaintiff<br><br>v.<br>CENTRAL METALS, INC.; ROMA STEEL<br>ERECTION, INC; ABC Corporation #1-100<br>(fictitious); JOHN DOE #1-100 (fictitious)<br>Defendants | : : : : : : : : : : | No.: |

## DEFENDANTS CENTRAL METALS, INC.'S AND ROMA STEEL ERECTION, INC.'S MOTION TO DISMISS THE PLAITNIFFS' COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)

Defendants Central Metals, Inc. and Roma Steel Erection, Inc., by and through their attorneys, Pozzuolo Rodden, P.C., hereby move this Court pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure to dismiss this action filed by the Plaintiff in the Superior Court of New Jersey, Law Division, Camden County at Docket No: L-2101-13 and asserting claims under: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) failure to comply with ERISA; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

1.      The grounds for Defendants' Motion to Dismiss Plaintiffs' Complaint are that, even if all of the allegations in the Plaintiff's Complaint are true, this action fails to state a claim upon which relief may be granted.  Contemporaneously herewith the Defendants file their Memorandum of Law in support of their Motion to Dismiss setting forth the reasons and legal arguments why the Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.      This Motion to Dismiss is based on the pleadings and papers on file with the Court in this action, the within Motion to Dismiss, the attached Notice of Motion, the attached

Memorandum of Law, and any oral argument, if any, presented to the Court at hearing on this Motion. A true and correct copy of the Plaintiff's Complaint is attached as Exhibit "A" to this Motion.

WHEREFORE, defendants Central Metals, Inc. and Roma Steel Erection, Inc. respectfully request that this Honorable Court rule in their favor and against the plaintiff Anthony DeBlasio and dismiss the Plaintiff's Complaint in its entirety.

POZZUOLO RODDEN, P.C.

Date: September 4, 2013          BY: __/s/ Judith. P. Rodden_____
                                 JUDITH P. RODDEN, ESQUIRE
                                 1916 East Route 70, Suite 6
                                 Cherry Hill, New Jersey 08003
                                 Telephone: (856) 489-7730
                                 Email: judy@pozzuolo.com
                                 Attorneys for defendants Central Metals, Inc. and
                                 Roma Steel Erection, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANTHONY DEBLASIO | : | |
| Plaintiff | : | |
| | : | No.: |
| v. | : | |
| CENTRAL METALS, INC.; ROMA STEEL | : | |
| ERECTION, INC; ABC Corporation #1-100 | : | |
| (fictitious); JOHN DOE #1-100 (fictitious) | : | |
| Defendants | : | |

## ORDER

AND  NOW,  this  _____  day  of  _____.  2013,  upon

consideration of Defendants Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ. P.

12(b)(6) for Failure to State a Claim Upon Which Relief May be Granted, and Plaintiff's

Opposition thereto, if any, it is hereby **ORDERED** and **DECREED** that Plaintiffs' Complaint is

Dismissed in its **ENTIRETY.**


**BY THE COURT:**

_____
                                                     **J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| ANTHONY DEBLASIO | : |
| Plaintiff | : |
| | :    NO.: |
| v. | : |
| CENTRAL METALS, INC.; ROMA STEEL | :    CIVIL ACTION |
| ERECTION, INC; ABC Corporation #1-100 | : |
| (fictitious); JOHN DOE #1-100 (fictitious) | : |
| Defendants | : |

---

**CENTRAL METALS, INC.'S AND ROMA STEEL ERECTION, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE**
**PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)**

Defendants Central Metals, Inc. ("Central") and Roma Steel Erection, Inc. ("Roma") (collectively hereinafter "Defendants"), by and through their attorneys, Pozzuolo Rodden, P.C., have contemporaneously filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) for Failure to State a Claim Upon which Relief May be Granted and this Memorandum of Law is submitted in support of that Motion.

**I.      INTRODUCTION**

On May 14, 2013 the Plaintiff Anthony DeBlasio (hereinafter the "Plaintiff") commenced this civil action by filing a Verified Complaint in the Superior Court of New Jersey, Law Division, Camden County at Docket No.: L-2101-13. The Plaintiff's Complaint alleges that the Plaintiff was an employee of the Defendants and that as part of his employment benefits, he participated in the "Central Metals/Roma Steel Defined Benefit Plan" offered by the Defendants (hereinafter the "Plan"). (Plaintiff's Complaint at ¶¶ 6-7). The Plaintiff's Complaint states that on or about August 8, 2010, the Plaintiff's employment with the Defendants was terminated based upon allegations of improprieties committed by the Plaintiff. (Plaintiff's Complaint at ¶ 6).

The Defendant's Complaint further alleges that the Plan was established under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 *et seq.* (hereinafter "ERISA"). (Plaintiff's Complaint at ¶ 8). The Plaintiff's Complaint further alleges that the Plan by its express terms is governed by and subject to the provisions of ERISA. (Plaintiff's Complaint at ¶ 8).

The Plaintiff's Complaint asserts five (5) claims all of which, on their face, relate to the alleged denial of benefits to the Plaintiff by the Defendants under the ERISA Plan, as follows: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) failure to comply with ERISA; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. (Plaintiff's Complaint at ¶¶ 30-51). Each of the Plaintiff's five (5) claims is based solely upon the alleged non-payment of benefits that the Plaintiff alleges are due to him under the ERISA Plan. (Plaintiff's Complaint at ¶¶ 30-51).

For the reasons stated below, the Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed because the Plaintiff's claims are not ripe and are premature since the Plaintiff has failed to exhaust the administrative remedies available to him under the Plan and all of the Plaintiff's New Jersey state law claims are preempted by ERISA.

## II.   STANDARD OF REVIEW

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[1] Gelman v. State

---

[1] While Gelman, is discussing an Appellate Court's standard of review it is still applicable because the Appellate Court's standard of review is the same as the standard of review applied at the district court level. See Hapsel v. State Farm Mutual Automobile Insurance Co., 241 Fed. Appx. 837, 839 (3rd. Cir. 2007) (stating "Our standard of

Farm Mutual Automobile Insurance Co., 583 F.3d 187, 190 (3rd. Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd. Cir. 2008)).

In Gelman, the United States Court of Appeals for the Third Circuit found a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). The Court stated "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court stated "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-- but it has not 'shown'--that the 'pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). See Also Umland v. PLANCO Financial Services, Inc., 542 F.3d 59 (3rd. Cir. 2008)(finding factual allegations in the complaint must rise above a speculative level).

As stated below, the Plaintiff's Complaint on its face fails to state a claim upon which relief may be granted and fails to show that the Plaintiff is entitled to relief. Accordingly, the Defendants respectfully request that this Honorable Court rule in their favor and dismiss the Plaintiff's Complaint in its entirety.

## III.    LEGAL ARGUMENT

Pursuant to Fed.R.Civ.P. 12(b)(6) in defense of a pleading a defending party may move the Court for an order to dismiss the complaint or counts of the complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6) provides:

> **(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: ... (6) failure to state a claim upon which relief can be granted...

review is the same as that applied by the District Court. We are required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff.").

(original emphasis).

      **A.**      **The Plaintiff's Complaint Fails to State a Claim Upon Which Relief May be Granted Because the Plaintiff Failed to Exhaust the Administrative Remedies Set Forth in the Plan.**

The Plaintiff's Complaint fails to state a claim and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the Plaintiff's Complaint is not ripe due to the Plaintiff's willful failure to exhaust the administrative remedies available to him as set forth in the Plan prior to filing his Complaint. The Plaintiff's Complaint on its face pleads no facts in support of a finding that the Plaintiff complied with the administrative remedies under the Plan. Moreover, the Plaintiff pleads no facts which support a finding that the administrative remedies failed to provide him with relief. Instead the Plaintiff merely asserts that he and his counsel have "sought the intervention of the United States Department of Labor" and nothing more. (Plaintiff's Complaint at ¶ 17).

In Harrow v. Prudential Insurance Co. of America, 279 F.3d 244, 249 (3rd. Cir. 2002), the United States Court of Appeals for the Third Circuit, affirmed a district court's grant of summary judgment in favor of the defendant based on the plaintiff's failure to exhaust administrative remedies under an ERISA plan. The Court expressly held, "'Except in limited circumstances... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.'" Id. (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3rd. Cir. 1990)). The Court further held, as follows:

> Courts require exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'...

Id. (quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980).

In Harrow, the United Court of Appeals for the Third Circuit found that the plaintiff had a handbook from the defendant that outlined the administrative procedures necessary for him to appeal his denial of benefits, and that the plaintiff failed to follow the outlined procedures and only made a single telephone call to a sales representative of the defendant to discuss his benefits. Id. at 252. The Court found that the "exhaustion of remedies requirement demands more" than the plaintiff's limited actions and it affirmed a grant of summary judgment dismissing the plaintiff's ERISA claim. Id. Additionally, the Court held that the plaintiff's claim for breach of fiduciary duty were nothing more than the plaintiff's attempt to recast his ERISA claims because the claims were solely based on the denial of benefits under the ERISA plan and, therefore, these were subject to the exhaustion doctrine. Id. Accordingly, the Court also affirmed the dismissal of the breach of fiduciary duty claim for the plaintiff's failure to exhaust the administrative remedies. Id.

Additionally, in Kilkenny v. Guy C. Long, Inc., 288 F.3d 116, 122 (3rd Cir. 2002) the United States Court of Appeals for the Third Circuit examined the ERISA exhaustion doctrine and held, "Under ERISA, internal remedies…must be exhausted prior to bringing suit in federal court." The Court held that the exhaustion of administrative remedies was necessary to reduce the number of ERISA claims and to allow the trustees of benefit plans to manage funds and follow the required decision making process prior to premature judicial intervention. Id. The Court held that the plaintiffs were required to avail themselves of the remedies procedures under the ERISA plan prior to filing suit in federal court and dismissed the action. Id.

Based on Harrow and Kilkenny, there is no doubt that all of the claims asserted in the Plaintiff's Complaint are all based upon his alleged denial of benefits under the ERISA Plan as follows:

1.      Count I – breach of contract.  The Plaintiff pleads: "Defendants, by their failure to identify and remit to Plaintiff the amounts due and payable to him under the Plan..." (Plaintiff's Complaint at ¶ 31).  "Plaintiff has fully performed all conditions, covenants and premises required on his part to be performed in accordance with the terms and conditions of the Plan...." (Plaintiff's Complaint at ¶ 32);

2.      Count II – breach of the covenant of good faith and fair dealing.  The Plaintiff pleads: "By reason of the status of Defendants as Plaintiff's employers and as administrators and fiduciaries under the Plan..." (Plaintiff's Complaint at ¶ 35);

3.      Count III – For Failure to Comply with ERISA.  The Plaintiff pleads: "In failing to remit prompt and complete payment to Plaintiff of all sums due him under the Plan, or even to determine and inform Plaintiff of the amounts due him under said Plan..." (Plaintiff's Complaint at ¶ 40);

4.      Count IV – For Intentional Infliction of Emotional Distress.  The Plaintiff pleads: "In failing to inform Plaintiff of the amounts due him and in failing and refusing to remit said amounts, Defendants deliberately directed extreme and outrageous conduct toward Plaintiff..." (Plaintiff's Complaint at ¶ 46);

5.      Count V – For Negligent Infliction of Emotional Distress.  The Plaintiff pleads: "In failing to inform Plaintiff of the amounts due him and in failing and refusing to remit said amounts, Defendants negligently produced or inflicted emotional distress..." (Plaintiff's Complaint at ¶ 50);

Based on Harrow and Kilkenny, as demonstrated by the plain and simple language of the allegations set forth in the Plaintiff's Complaint, the Plaintiff is attempting to recast his claims even though all of his claims arise under ERISA. Similar to the plaintiff's breach of fiduciary

6

duty claim in Harrow, the Plaintiff's claims here for breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress are all seeking damages based upon the Defendants alleged failure to pay the Plaintiff benefits under the Plan and are simply the Plaintiff's ERISA claim recast in a state law context. Accordingly, these claims are also subject to the exhaustion doctrine and must be dismissed.

Therefore, since all of the Plaintiff's claims are based on his ERISA claim, all of the Plaintiff's claims are subject to the exhaustion of administrative remedies of the Plan under the exhaustion doctrine. Accordingly, all of the Plaintiff's claims should be dismissed in their entirety because of the Plaintiff's failure to exhaust administrative remedies under the Plan prior to filing a lawsuit.

### 1.    Required Administrative Procedures Under the Plan.

The Summary Plan Description attached to the Plaintiff's Complaint as Exhibit "1" clearly and unequivocally sets forth the administrative remedies and procedures that a beneficiary or participant must follow to claim benefits he/she asserts have been wrongfully denied.[2] (Plaintiff's Complaint at Exhibit "1"). Section 7(B), Claim Procedure, of the Plan attached as Exhibit "1" to the Plaintiff's Complaint, contains clear and concise provisions expressly setting forth the administrative remedies available to the Plaintiff under the Plan and provides, in relevant part:

> ….if you feel your benefit has been incorrectly determined and you wish to request a review of that determination, you may file a written notice with any Committee Member.
>
> The Committee will give you or your beneficiary written notice of its decision on review within 90 days of the filing of the request for review, unless special

---

[2] The Plaintiff attaches to his Complaint Summary Plan Description dated January 1, 2008. This Summary Plan Description was amended on January 1, 2011 and sets forth similar administrative procedures and remedies.

circumstances require an extension of time up to an additional 90 days. If your claim is denied, this notice will (1) specify the reasons for denial, (2) refer to specific Plan provisions on which the denial is based, (3) describe any additional material or information necessary to perfect the claim; and (4) explain the review procedure. You or your beneficiary may then appeal the Committee's decision by filing a written notice of appeal with the Committee within 60 days after your receipt of the notice of denial.

*          *          *          *          *

The Committee will make its decision on the appeal within 60 days after their receipt of the appeal (unless special circumstances require an extension of time up to 120 days), and will give a written notice of its decision which specifies the reasons for its decision. The Committee will decide whether a hearing will be held on the claim and will notify the claimant at least 14 days before the hearing, if one is to be held.

(Plaintiff's Complaint at Exhibit "1").

The Plaintiff filed his Complaint in this matter on or about May 14, 2013. While the Plaintiff's Complaint alleges that he seeks benefits allegedly due to him under the Plan, he alleges no facts to support a finding that he availed himself of the administrative remedies expressly required under the Plan. (Plaintiff's Complaint at ¶ 26). Instead of exhausting the administrative remedies set forth in the Plan the Plaintiff instead alleges that he "has sought the intervention of the United States Department of Labor" and that the United States Department of Labor "has communicated with defendants and their counsel". (Plaintiff's Complaint at ¶¶ 17-18). The Plaintiff further alleges that he has "confirmed that Plaintiff's right to receive benefits cannot be precluded, offset, or in anyway limited as a result of any claims". (Plaintiff's Complaint at ¶ 18).

By the Plaintiff's own admissions set forth by his Complaint, the Plaintiff has expressly ignored the administrative remedies and claim procedure required by the Plan prior to filing this lawsuit. Under the Plan, the Plaintiff must first submit the matter to the Administrative Committee and exhaust the appeal procedure contained in the Plan. (Plaintiff's Complaint at

8

Exhibit "1").  Similar to the plaintiffs in <u>Harrow</u> and <u>Kilkenny</u> the Plaintiff's efforts prior to filing a Complaint did not comply with the Claim Procedure under the Plan and were minimal and fail to satisfy the exhaustion doctrine and, therefore, the Plaintiff's Complaint is premature, not ripe and should be dismissed by this Honorable Court.

Additionally, based on the foregoing, the Defendants respectfully request that this Honorable Court rule in their favor and dismiss the Plaintiff's Complaint in its entirety based upon the Plaintiff's premature filing of the Complaint and his failure to the exhaust the administrative remedies set forth under the Plan.

      **B.**      **The Plaintiff's State Law Claims Are Preempted By ERISA and Must be Dismissed.**

The Plaintiff's Complaint alleges four state law claims based upon his alleged denial of benefits under the Plan as follows: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress (hereinafter collectively the "State Law Claims"). (See Plaintiff's Complaint). These State Law Claims fail to state a claim upon relief can be granted because they are completely preempted by ERISA.  ERISA § 502(a)(1)(B), 29 U.S.C.S. § 1132,  is an enforcement provision allowing for participants or beneficiaries of a plan under ERISA to bring claims "to recover benefits due to him under the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 502(a)(1)(B) of ERISA is interpreted by courts to preempt state law claims that are based on any of the claims covered by ERISA.  See <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 214 (2004). Furthermore, ERISA § 514, 29 U.S.C.S. § 1144, specifically contains a preemption provision stating, in relevant part, that "the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

9

In Aetna Health Inc. the Supreme Court of the United States examined ERISA § 502(a) and held that the plaintiffs' state law claims were preempted by ERISA. 542 U.S. at 204. The Supreme Court expressly held, as follows:

> The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514... which are intended to ensure that employee benefit plans would be 'exclusively a federal concern.'... ERISA's comprehensive legislation scheme includes 'an integrated system of procedural enforcement'... This enforcement mechanism, ERISA § 502 is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans... (internal citations omitted).

Id. at 208. The Court then held that "**any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.**" (emphasis added). Id. at 209. The Court held that where a plaintiff could have brought a claim in accordance with ERISA § 502 and there "is no other independent legal duty that is implicated by defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502 (a)(1)(B)." Id. at 210.

The Court then found that the plaintiffs' claims were based on a denial of coverage pursuant to an employee benefit plan regulated by ERISA. Id. at 211. The Court found that the plaintiffs alleged that defendant's owed them a statutory duty of care could be independent of ERISA, however, the Court also found that in context with the facts of the case that duty did not arise independently of ERISA. Id. at 212. The Court found the alleged liability of the defendant only existed due to the defendant's administration of an ERISA regulated plan and that the plaintiffs' state law claims were not entirely independent of ERISA. Id. at 213. The Court then held the plaintiffs' state law claims fell within the enforcement provision of ERISA § 502(a)(1)(B) and were preempted. Id. at 214.

10

In the case at bar, the Plaintiff's State Law Claims clearly duplicate, supplement, and supplant the Plaintiff's ERISA claim and the ERISA civil enforcement remedy in § 502 of ERISA, as follows:

(1)     Plaintiff's breach of contract count alleges that the Defendants failed to pay the Plaintiff amounts due under the Plan. (Plaintiff's Complaint at ¶ 31);

(2)     Plaintiff's breach of the covenant of good faith and fair dealing count alleges that the Defendant's owed a duty to the Plaintiff as administrators and fiduciaries under the Plan. (Plaintiff's Complaint at ¶ 35); and

(3)     Plaintiff's Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress counts are based upon Defendant's alleged failure to pay Plaintiff amounts he claims are due to him under the Plan. (Plaintiff's Complaint at ¶¶ 46 and 50).

Based on forgoing and the plain language of the Plaintiff's Complaint, all of the Plaintiff's claims are based upon the allegation that he is owed benefits under the Plan from the Defendants. Pursuant to ERISA §502, these are the type of claims covered under Section 502 because these claims relate directly to the Plaintiff's efforts to recover benefits and enforce his perceived rights under the Plan. Furthermore, the Plaintiff's State Law Claims fail to allege any duty or liability of the Defendants completely independent of their administration of the ERISA controlled Plan. (See Plaintiff's Complaint Generally).  In accordance with Aetna Health Inc., the State Law Claims are merely duplicating, supplementing, and supplanting the ERISA civil enforcement remedy and conflict with the "clear congressional intent to make the ERISA remedy exclusive" and, therefore, Plaintiff's State Law Claims must be preempted.

Based on the foregoing, the Defendants respectfully request that this Honorable Court enter an Order finding the Plaintiff's State Law Claims are preempted and fail to state a claim

11

upon which relief may be granted. Accordingly, the Plaintiff's State Law Claims should be dismissed in their entirety.

### C.  The Plaintiff's Breach of Contract Claim Must Be Dismissed.

While the Plaintiff's breach of contract claim is based upon the Plan the Plaintiff also alleges that the Defendants failed to name him the sole owner of an insurance policy (Plaintiff's Complaint ¶ 31). This allegation alone is not enough to establish a breach of contract claim independent of the Plaintiff's ERISA claim for the reasons set forth below.

The Plaintiff's Complaint alleges that the Defendant's procured a life insurance policy through Phoenix Home Life Mutual Insurance Company, No.: U014692 with the Plaintiff named as the insured and his survivor the designated beneficiaries (hereinafter "Insurance Policy"). (Plaintiff's Complaint ¶ 20). The Plaintiff's Complaint further alleges that at some point the Insurance Policy became a "split dollar insurance policy" which required the Plaintiff and Defendants to both pay a portion of the premiums with the Defendants "entitled to receive reimbursement for portions of the policy paid by the Defendants in the event that the policy benefit became payable or the policy was cashed out in the interim." (Plaintiff's Complaint ¶ 21).

The Plaintiff's Complaint alleges that the Plaintiff has requested the Defendants name the Plaintiff the sole owner of the Insurance Policy. (Plaintiff's Complaint ¶ 23-24). At no point does the Plaintiff allege that the a contract controls the Insurance Policy, that the Insurance Policy is a benefit of his former employment with the Defendants, or that even that the Defendants have any obligation whatsoever to name him the sole owner of the Insurance Policy. (See Plaintiff's Complaint Generally). In his breach of contract claim the Plaintiff alleges that the Defendants breach "contractual obligations" through their alleged denial of benefits under the Plan to the Plaintiff and for failing to the name the Plaintiff the sole owner of the Insurance Policy.

12

(Plaintiff's Complaint at ¶31). However, contractual obligations alleged in the Plaintiff's Complaint relate to the Plan and there is no allegation that the Insurance Policy relates to the Plan or is controlled by any other contractual obligation.

Even accepting all the facts plead in the Plaintiff's Complaint as true in accordance with Gelman, the Plaintiff has failed to set forth a claim entitling him to relief because he has not alleged that a contract exists between himself and the Defendants which has been breached relating to ownership of the Insurance Policy. Accordingly, the Defendant's respectfully requests that this Honorable Court dismiss the Plaintiff's breach of contract of claim in its entirety for failure to state a claim.

## IV.    CONCLUSION

Based on the foregoing, Central Metals, Inc. and Roma Steel Erection, Inc. most respectfully request that the Plaintiff's Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because: (1) the Plaintiff has failed to exhaust administrative remedies in accordance with the Plan and is prematurely seeking this Honorable Court's intervention; (2) the Plaintiff's State Law Claims are preempted by ERISA; and (3) there is no contract between the parties relating to ownership of an insurance policy.

WHEREFORE, Central Metals, Inc. and Roma Steel Erection, Inc. most respectfully submit to this Honorable Court that the Plaintiffs' Complaint should be dismissed in its entirety for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

POZZUOLO RODDEN, P.C.

Date: September 4, 2013

BY: ___/s/ Judith P. Rodden_____
   JUDITH P. RODDEN, ESQUIRE
   LESLEY M. IBANEZ, ESQUIRE
   1916 East Route 70, Suite 6
   Cherry Hill, NJ 08003
   Telephone: (856) 489-7730
   Email: Judy@pozzuolo.com
   Attorneys for Central Metals, Inc. and
   Roma Steel Erection

14

EXHIBIT "A"

LAW OFFICES OF
STEPHEN J. BUIVIDAS
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorneys for plaintiffs

| | |
|---|---|
| ANTHONY DEBLASIO,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>CENTRAL METALS, INC.; ROMA STEEL<br>ERECTION, INC.;<br>ABC Corporation #1-100 (fictitious);<br>JOHN DOE #1-100 (fictitious)<br><br>                                        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NUMBER L-2101-13<br>CIVIL ACTION<br><br><br>SUMMONS |

To:

Central Metals, Inc. and Roma Steel Erection, Inc. C/o Ms. Judy Rodden, Esquire, 1916 E. Route 70, Suite 6, Cherry Hill, NJ 08003

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

| Dated: July 1, 2013 | /s/ Jennifer M. Perez<br>Clerk of the Superior Court |
|---|---|
| Defendant to be Served: | Central Metals, Inc. and Roma Steel Erection, Inc. |
| Service Address: | 1916 E. Route 70, Suite 6, Cherry Hill, NJ 08003 |

1

ATLANTIC COUNTY:
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LEGAL SERVICES (609) 345-3444
LAWYER REFERRAL (609) 345-4200

BERGEN COUNTY:
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
LEGAL SERVICES (201) 488-0044
LAWYER REFERRAL (201) 487-2166

BURLINGTON COUNTY:
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LEGAL SERVICES (609) 261-1088
LAWYER REFERRAL (609) 261-4862

CAMDEN COUNTY:
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St.
Camden, NJ 08103
LEGAL SERVICES (856) 964-2010
LAWYER REFERRAL (856) 964-4520

CAPE MAY COUNTY:
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210
LEGAL SERVICES (609) 465-3001
LAWYER REFERRAL (609) 463-0313

CUMBERLAND COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette, P.O. Box 615
Bridgeton, NJ 08302
LEGAL SERVICES (856) 451-0003
LAWYER REFERRAL (856) 692-6207

ESSEX COUNTY:
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LEGAL SERVICES (973) 622-6207
LAWYER REFERRAL (973) 624-4500

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Attn: Intake
Civil Case Management Office
First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096
LEGAL SERVICES (856) 848-4589
LAWYER REFERRAL (856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LEGAL SERVICES (201) 792-6363
LAWYER REFERRAL (201) 798-2727

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LEGAL SERVICES (908) 782-7979
LAWYER REFERRAL (908) 483-6109

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad St., P.O. Box 8068
Trenton, NJ 08650
LEGAL SERVICES (609) 585-6200
LAWYER REFERRAL (609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633
LEGAL SERVICES (732) 828-0053
LAWYER REFERRAL (732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House, 71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1269
LEGAL SERVICES (732) 431-5544
LAWYER REFERRAL (732) 866-0020

MORRIS COUNTY:
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910
LEGAL SERVICES (973) 285-6911
LAWYER REFERRAL (973) 267-5882

OCEAN COUNTY:
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LEGAL SERVICES (732) 341-2727
LAWYER REFERRAL (732) 240-3666

PASSAIC COUNTY:
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
LEGAL SERVICES (973) 278-9223
LAWYER REFERRAL (973) 523-2900

SALEM COUNTY:
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LEGAL SERVICES (856) 678-8363
LAWYER REFERRAL (856) 451-0003

SOMERSET COUNTY:
Deputy Clerk of the Superior Court
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LEGAL SERVICES (908) 685-2333
LAWYER REFERRAL (908) 231-0840

SUSSEX COUNTY:
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LEGAL SERVICES (973) 267-5882
LAWYER REFERRAL (973) 383-7400

UNION COUNTY:
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LEGAL SERVICES (908) 353-4715
LAWYER REFERRAL (908) 354-4340

WARREN COUNTY:
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LEGAL SERVICES (908) 387-1835
LAWYER REFERRAL (908) 475-2010

Appendix XII-B1



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| STEPHEN J. BUIVDAS | (856) 428-6336 | Camden |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| LAW OFFICES OF STEPHEN J. BUIVIDAS | L-2101-13 |

| OFFICE ADDRESS | | DOCUMENT TYPE |
|---|---|---|
| 907 Haddonfield-Berlin Road Cherry Hill, NJ 08034 | MAY 14 2013 | Complaint |
| | | JURY DEMAND ☒ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| ANTHONY DEBLASIO, Plaintiff | Anthony DeBlasio v. Central Metals, Inc., Roma Steel Erection, Inc., ABC Corporation #1-100, and John Does (#1-10) |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO |
|---|---|
| 599 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? | IF YES, LIST DOCKET NUMBERS |
|---|---|
| ☒ YES ☐ NO | Pennsylvania Civil Case NO. 12-8375 |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐YES ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN |
|---|---|
| | ☐ NONE ☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☒YES ☐No | IF YES, IS THAT RELATIONSHIP | ☒ EMPLOYER-EMPLOYEE ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR ☐ BUSINESS | ☐ OTHER (explain) |
|---|---|---|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES, BY THE LOSING PARTY? | ☐ YES ☒ NO |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐YES ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED? ☐YES ☒ NO | IF YES, FOR WHAT LANGUAGE: |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE:

 SIDE 2  

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)**

### Track I — 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

### Track II — 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT – OTHER |

### Track III — 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |
| 620 | FALSE CLAIMS ACT |

### Track IV — Active Case Management by Individual Judge / 450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Centrally Managed Litigation (Track IV)
| | |
|---|---|
| 280 | Zelnorm |
| 285 | Stryker Trident Hip Implants |

### Mass Tort (Track IV)
| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 279 | GADOLINIUM |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 271 | ACCUTANE | 282 | FOSAMAX |
| 272 | BEXTRA/CELEBREX | 283 | DIGITEK |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 275 | ORTHO EVRA | 286 | LEVAQUIN |
| 277 | MAHWAH TOXIC DUMP SITE | 601 | ASBESTOS |
| 278 | ZOMETA/AREDIA | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."
Please check off each applicable category:
☐ Verbal Threshold      ☐ Putative Class Action      ☐ Title 59

**LAW OFFICES OF**
**STEPHEN J. BUIVIDAS**
Stephen J. Buividas, Esq.
907 Haddonfield-Berlin Road
Cherry Hill, New Jersey 08034
(856) 428-6336
Attorneys for plaintiffs

MAY 14 2013

| | |
|---|---|
| ANTHONY DEBLASIO,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>CENTRAL METALS, INC.; ROMA STEEL<br>ERECTION, INC.;<br>ABC Corporation #1-100 (fictitious);<br>JOHN DOE #1-100 (fictitious)<br><br>                                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NUMBER  *L-2101-13*<br>CIVIL ACTION<br><br><br><br>VERIFIED COMPLAINT |

## <u>CIVIL ACTION</u>

Plaintiff ANTHONY DEBLASIO, residing at 105 Robin Hood Lane, Aston, Pennsylvania, by way of Complaint against Defendants, states:

1.   Plaintiff ANTHONY DEBLASIO (hereinafter "Plaintiff" or "DeBlasio"), is an individual residing at 105 Robin Hood Lane, Aston, Pennsylvania.

2.   Defendant CENTRAL METALS, INC. (hereinafter "Defendant" or Central" is a corporation duly organized and existing under the laws of the State of New Jersey, authorized to do business and doing business at 1054 South Second Street, Camden, New Jersey 08103.

3.   Defendant ROMA STEEL ERECTION, INC. (hereinafter "Defendant" or "Roma") is a corporation duly organized and existing under the laws of the State of New Jersey, authorized to do business and doing business at 1051 Locust Street, Camden, New Jersey

08103.

4.   The true names, whether individual, corporate, associate or otherwise, of Defendants ABC

CORPORATION #1-100 (fictitious) and JOHN DOE #1-100 (fictitious), inclusive, are

unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff

reserves the right to amend this complaint to show their true names and capacities when

ascertained. Plaintiff is informed and believes, and based upon such information and belief

alleges, that each of the fictitiously-named Defendants is responsible in some manner for the

acts and occurrences herein alleged, and that Plaintiff's damages as herein alleged were

proximately caused by such Defendants.

5.   Plaintiff is informed and believes, and based upon such information and belief alleges, that

each Defendant is, and at all times herein mentioned was, the agent, employee or

representative of each and every other Defendant, and in doing the acts and things herein

alleged, was acting within the course and scope of such agency or employment and in such

representative capacity.

6.   Beginning in or about December 1, 1985, Plaintiff was employed by Defendants. His

employment continued until on or about approximately August 8, 2010, when Plaintiff was

terminated by Defendants, and was brought in as a Third Party Defendant based on allegations

of improprieties relating to Plaintiff's performance of his duties, which improprieties Plaintiff

denies. Said improprieties remain unsubstantiated.

7.   During the course of his employment with the companies, Plaintiff became eligible for, and

was offered participation in, the "Central Metals/Roma Steel Defined Benefit Plan"

(hereinafter the "Plan"). Pursuant to its terms, designated by IRS Identification Number 22-

2384551, Defendant Central serves as administrator of the Plan. A Summary Plan Description (sometimes referred to herein as the "SPD") , reflecting the most recent amendment to the Plan, is attached hereto, marked as Exhibit "1", and expressly incorporated herein by this reference.

8.    The Plan was established incident to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1002 *et seq.*, and is, by its terms, subject to said provisions.

9.    Plaintiff was designated by the Administrator to serve as a member of the Committee which assisted with management of the Plan, and remained in the employ of Defendants in part in reliance upon the expectation that he would eventually share in the benefits of the Plan.

10.    By the terms of the Plan, participants became partially vested after three years and fully vested within seven years, and were entitled to a year of service credit for all years worked between January 1, 1993 and December 31, 2007.  As a result of the foregoing, Plaintiff was fully vested in the Plan at the time of his separation from employment.

11.    The Plan provides for various payment options depending upon, for example, whether a participant remains employed until full retirement age, discontinues employment prior to attaining full retirement age, dies, or becomes disabled.

12.    Plaintiff is currently disabled, and has been deemed totally disabled by the Social Security Administration.

13.    As set forth in the Plan summary (Part 5(B)), a participating employee is entitled to receive Early Retirement Benefits at any time if his employment has ceased and he is considered to have a Total Disability.  Furthermore, in accordance with the Plan, a participant who has been

deemed totally disabled by the Social Security Administration "will be considered to have a Total Disability" for purposes of receiving retirement benefits under the plan (Part 5(B)).

14.    The Plan provides participants with various benefit distribution options, one of which is a single, lump sum payment of accrued benefits (Part 6(B)).

15.    At various times since the termination of his employment, Plaintiff has requested payment, in a lump sum, of his accrued benefits under the Plan, and has provided defendants with proof of his Total Disability, including the fact that he has been deemed totally disabled by the Social Security Administration.

16.    Notwithstanding the foregoing, defendants have failed and refused to pay Plaintiff the benefits which he has duly requested, and to which he is entitled pursuant to the terms of the Plan and the requirements of ERISA. By its terms, ERISA precludes the denial or deferral of benefits based upon claims or allegations which have been, or may be in the future, asserted against a Plan participant,

17.    Plaintiff, both orally and in writing, personally and through counsel, has sought the intervention of the United States Department of Labor (hereinafter the "Department").

18.    Plaintiff is informed and believes, and based upon such information and belief alleges, that the Department has communicated with defendants and their counsel in an effort to expedite Plaintiff's claim for benefits, has requested information relating thereto, and has specifically confirmed that Plaintiff's right to receive benefits cannot be precluded, offset, or in any way limited as a result of any claims, allegations or purported causes of action which Defendants may assert against Plaintiff.

19.    Notwithstanding the foregoing, Defendants have failed and refused, and continue to fail and

4

refuse, to remit to Plaintiff the benefits which are due and owing to him in accordance with the Plan.

20.   In addition, while Plaintiff was in Defendants' employ, Defendants procured a policy of life insurance through Phoenix Home Life Mutual Insurance Company, being Number U014692 (hereinafter the "Phoenix policy"). Plaintiff was the named insured under said policy, and his survivors were the designated beneficiaries. The face amount of the policy, which remains in effect, is $100,000.00.

21.   At some point, Plaintiff was made aware that the Phoenix policy was a so-called "split dollar insurance" policy, by the terms of which Plaintiff and Defendants each became obligated to pay a portion of the periodic premiums, and Defendants became entitled to receive reimbursement for portions of the policy paid by Defendants in the event that the policy benefit became payable or the policy was cashed out in the interim.

22.   Plaintiff has paid in excess of $7000.00 in premiums since the inception of the policy in order to maintain the policy in effect.

23.   Plaintiff has requested that the Plaintiff be named as sole owner of the Policy so he can ascertain a portion of the cash value to which he is entitled. At the request of Defendants, Plaintiff has provided written proof, through Phoenix Mutual Home Life Insurance Company, of the premium amounts paid by Plaintiff so that the respective amounts to which Plaintiff and Defendants are entitled can be readily ascertained.

24.   Despite the foregoing, Defendants have failed and refused, and continue to fail and refuse, to name as sole owner of the Policy so he can ascertain a portion of the cash value to which he is entitled.

25.   Plaintiff, both personally and though counsel, has diligently sought both the benefits due him under the Plan and the amounts due him pursuant to the Phoenix policy.

26.   Plaintiff's efforts to resolve this matter without resort to litigation have been rebuffed by Defendants.  By an email dated April 5, 2013 to Defendants' counsel, Plaintiff's counsel implored Defendants to resolve these matters expeditiously, and afforded Defendants the opportunity to avoid litigation.   Attached hereto, marked as Exhibit "2" and expressly incorporated herein by reference, is a true and correct copy of the April 5. 2015 email from attorney Stephen Buividas to Defendants' counsel, Joe Pozzuolo.

27.   As a result of Defendants' failure and refusal to remit to him the sums due under the Plan and the Phoenix policy, or even to determine the amounts due and payable there under, Plaintiff has sustained damages in an amount equal to the sums due and payable, the precise amount of which sums are presently unknown to Plaintiff, and which sums continue to accrue.

28.   Plaintiff continues to suffer financial strain by reason of Defendants' wrongful withholding of the aforesaid sums, and is unable to meet personal expenses and obligations, or even to provide necessary medical care for himself and members of his family.

29.   In addition, Plaintiff has suffered physical and emotional anguish and distress, in amounts to be determined at the time of trial, as a direct and proximate result of the foregoing conduct on the part of Defendants.

## COUNT 1

### (Breach of Contract)

30. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

31. Defendants, by their failure to identify and to remit to Plaintiff the amounts due and payable to him under the Plan, and by their failure to name Plaintiff as sole owner of the Policy so he can ascertain a portion of the cash value to which he is entitled, have breached their contractual obligations to Plaintiff.

32. Plaintiff has fully performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the Plan and the Phoenix policy, except to the extent that his performance there under has been excused or rendered impossible of performance by the conduct of Defendants.

33. As a result of the foregoing breaches Plaintiff has been damaged, as set forth above, in amounts to be determined at trial, but not less than the jurisdictional limits of the Court.


WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a)   Awarding Plaintiff monetary damages, including but not limited to all sums due him under the Defined Benefits Plan and the Phoenix policy, in an amount to be proved at the time of trial, together with interest thereon at the legal rate;

(b)   Awarding Plaintiff its costs of suit and reasonable attorneys' fees herein, and

(c)   Awarding such other and further relief as the Court may deem just and proper.


7

## COUNT II

### (For Breach of the Covenant of Good Faith and Fair Dealing)

34. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as though the same were fully set forth herein.

35. By reason of the status of Defendants as Plaintiff's employers and as administrators and fiduciaries under the Plan, the inequality of bargaining position between Defendants and Plaintiff, and the confidentiality and trust with which Defendants were vested, Defendants owed Plaintiff a duty of good faith and fair dealing in connection with the aforesaid transactions.

36. In doing the acts and engaging in the conduct herein alleged, Defendants have breached their duty of good faith and fair dealing which they owed to Plaintiff.

37. In breaching their duty of good faith and fair dealing Defendants acted willfully, wantonly, and with malice and oppression toward Plaintiff.

38. By reason of said willfulness, wantonness, malice and oppression by Defendants, Plaintiff is entitled to punitive and exemplary damages in an amount to be determined, but not less than $500,000.00, sufficient to punish said Defendants and deter them from engaging in the same or similar acts or conduct in the future.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a) Awarding Plaintiff damages in an amount to be proved at the time of trial, together with interest thereon at the legal rate;

(b) Awarding Plaintiff punitive and exemplary damages in an amount not less than

8

$500,000.00;

(c)     Awarding Plaintiff its costs of suit and reasonable attorneys' fees herein, and

(d)  Awarding such other and further relief as the Court may deem just and proper.

## COUNT III.

### (For Failure to Comply with ERISA)

39.   Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though the same were fully set forth herein.

40.   In failing to remit prompt and complete payment to Plaintiff of all sums due him under the Plan, or even to determine and inform Plaintiff of the amounts due him under said Plan, Defendants have failed and refused to discharge the statutory and fiduciary obligations imposed upon them by the provisions of ERISA.

41.   By reason of the foregoing, Plaintiff has been damaged in the manner and amounts aforesaid.

42.   In addition, Plaintiff has been damaged by the fact that it has become necessary for him, in order to enforce his rights, to engage counsel to pursue the rights and benefits to which he is entitled under ERISA.

43.   ERISA provides that a litigant may recover reasonable and necessary attorney's fees incurred in enforcing the rights and remedies afforded there under.

44.   As a result of the foregoing, Plaintiff is entitled to recover his attorney's fees reasonably

and necessarily incurred herein.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

   (a)   Requiring Defendants to determine the amounts due and payable to Plaintiff under the plan and immediately remit said sums, together with such other damages as may be proved at trial, together with interest, to Plaintiff;

   (b)   Awarding Plaintiff punitive and exemplary damages in an amount not less than $500,000.00; and

   (c)   Awarding Plaintiff its costs of suit and reasonable attorneys' fees herein, together with such other and further relief as the Court deems just and proper.

## COUNT IV

### (For Intentional Infliction of Emotional Distress)

45.   Plaintiff hereby incorporates the foregoing paragraphs of this complaint as though the same were fully set forth herein.

46.   In failing to inform Plaintiff of the amounts due him and in failing and refusing to remit said amounts, Defendants deliberately directed extreme and outrageous conduct toward Plaintiff, intending thereby to produce or inflict emotional distress, or acted in deliberate disregard of the high degree of probability that such emotional distress would ensue.

47.   Said misconduct directly and proximately caused Plaintiff emotional distress that no reasonable person could or should reasonably be expected to endure;

48.   By reason of such conduct, Plaintiff is entitled to punitive and exemplary damages in an

amount to be determined, but not less than $500,000.00, sufficient to punish Defendants and to deter them from engaging in the same or similar acts in the future.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a) Awarding Plaintiff damages in an amount to be determined at the time of trial, together with interest thereon at the legal rate;

(b) Awarding Plaintiff punitive and exemplary damages in an amount not less than $500,000.00;

(c) For such other and further relief as the Court deems just and proper.

## Count V

### (For Negligent Infliction of Emotional Distress)

49.   Plaintiff hereby incorporates the foregoing paragraphs of this complaint as though the same were fully set forth herein.

50.   In failing to inform Plaintiff of the amounts due him and in failing and refusing to remit said amounts, Defendants negligently produced or inflicted emotional distress, or acted in negligent disregard of the high degree of probability that such emotional distress would ensue.

51.   Said misconduct directly and proximately caused Plaintiff emotional distress that no reasonable person could or should reasonably be expected to endure.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

11

(a) Awarding Plaintiff damages in an amount to be determined at the time of trial, together

with interest thereon at the legal rate;

(b) For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

BY: _____
STEPHEN J. BUIVIDAS
Attorney for Plaintiff

DATED: _5 |9|13_

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues herein

LAW OFFICE OF STEPHEN J. BUIVIDAS

BY: _____
STEPHEN J. BUIVIDAS, ESQUIRE
Attorneys for Plaintiff

## CERTIFICATION IN LIEU OF OATH FOR ANTHONY DEBLASIO

I, Anthony DeBlasio, certify that the statements contained in this certification are true.  I understand that if any of the statements contained in my certification are willfully false, I am subject to punishment.

Dated: _May 1ST 2013_

_Anthony DeBlasio_

Anthony DeBlasio

<u>SUMMARY PLAN DESCRIPTION</u>

<u>FOR THE</u>

<u>CENTRAL METALS/ROMA STEEL</u>

<u>DEFINED BENEFIT PLAN</u>

**EDITION DATE:** 1/1/2008

H/data/patw/central metals 2008 DB.spd.doc

<u>TABLE OF CONTENTS</u>

INTRODUCTION

PART 1          GENERAL INFORMATION

PART 2          IMPORTANT PLAN DATES

PART 3          DEFINITIONS

PART 4          ELIGIBILITY FOR PLAN PARTICIPATION

PART 5          PLAN BENEFITS
                (A)   BENEFIT AT NORMAL RETIREMENT DATE
                (B)   DISABILITY RETIREMENT
                (C)   DEFERRED RETIREMENT
                (D)   DEATH BENEFIT
                (E)   VESTED BENEFIT
                (F)   FORFEITED BENEFITS

PART 6          BENEFIT PAYMENTS
                (A)   COMMENCEMENT OF BENEFITS
                (B)   METHODS OF DISTRIBUTION
                (C)   TAXATION OF DISTRIBUTIONS

PART 7          PLAN MANAGEMENT AND CLAIMS PROCEDURE
                (A)   PLAN MANAGEMENT
                (B)   CLAIMS PROCEDURE

PART 8          MISCELLANEOUS
                (A)   PLAN AMENDMENTS
                (B)   PLAN TERMINATION
                (C)   NO ASSIGNMENT OF PLAN BENEFITS

PART 9          YOUR LEGAL RIGHTS

## INTRODUCTION

This Pension Plan has been established by the Plan Administrator specified in Part 1(A) for the exclusive benefit of all Participants and their Beneficiaries.    Through this Plan, Participants accumulate benefits toward their retirement.    This is a DEFINED BENEFIT PLAN subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).

The purpose of this Summary Plan Description is to describe in general terms the primary features of this Plan.   The complete terms of the Plan and Trust are set forth in the Plan/Trust document, a copy of which may be obtained from the Plan Administrator.    In the event of any differences between this Summary and the provisions of the Plan/Trust document, the actual Plan/Trust document will govern.

3

## PART 1 - GENERAL INFORMATION

(A)   **Plan Administrator:**

Central Metals, Inc.
1054 South 2nd Street
Camden, NJ 08103

Telephone:  (609) 963-5844

(B)   **Participating Employers:**

Central Metals, Inc.
Roma Steel Erection, Inc.

(C)   **Federal Identification Numbers:**

Plan Administrator's IRS Identification Number: 22-2384551

Plan Identification Number:  004

(D)   **Plan Trustees:**

Joseph C. Giangulio

Address:  c/o Plan Administrator

(E)   **Committee Members:**

Joseph C. Giangulio
Anthony M. DeBlasio

Address:  c/o Plan Administrator

(F)   **Agent for Service of Legal Process:**

Joseph C. Giangulio

4

## PART 2 - IMPORTANT PLAN DATES

(A)  **EFFECTIVE DATE:**  January 1, 1998

This is the date the Plan was established.  It is the earliest date that you could have become a Participant.

(B)  **PLAN YEAR:**  January 1st to December 31st

This is the 12 consecutive month period used for maintaining the Plan's financial records.  It is also the period used for computing your Years of Service, Years of Participation and a Break in Service.

(C)  **VALUATION DATE:**  Each December 31st

This is the date as of which your Normal Retirement Benefit and Accrued Benefit will be calculated and the date the Plan's assets are valued.

(D)  **NORMAL RETIREMENT DATE:**

The LATER of your 65th birthday, or the 5th anniversary of your participation in the Plan.

(E)  **AMENDMENT DATE:**  March 19, 2008

This Plan was last amended effective as of the above date and this Summary Plan Description (SPD) reflects the amended Plan provisions.

5

## PART 3 - DEFINITIONS

Your **ACCRUED BENEFIT** is that portion of your Normal Retirement Benefit which you have earned as of a given date. Your Accrued Benefit is determined by multiplying your Normal Retirement Benefit by a fraction, the numerator of which is your actual Years of Service on the earlier of your employment termination date or December 31, 2007 and the denominator of which is the number of Years of Service you would have completed as of your Normal Retirement Date. Your Accrued Benefit becomes payable on your Normal Retirement Date. The maximum Years of Service counted for purposes of the above fraction is 14 and does not include years prior to 1-1-93.

A **BREAK IN SERVICE** is a Plan Year in which you were credited with less than 501 Hours of Service.

Your **"EARLY RETIREMENT BENEFIT"** will be equal to your Accrued Benefit reduced for each full month that your benefit commencement date precedes your Normal Retirement Date. The reduction is determined as follows: 5/9th of 1% for each of the first 60 months that your benefit commencement date precedes your Normal Retirement Date; 5/18th of 1% for each of the next 60 months; and reduced actuarially (mathematically) for each additional month thereafter.

An **HOUR OF SERVICE** is an hour for which you are directly or indirectly compensated by the Employer, including compensation received as vacation pay, holidays, sick pay or otherwise.

Your **VESTED BENEFIT** is that portion of your Accrued Benefit that is non-forfeitable (owned by you). It is determined by multiplying your Accrued Benefit as of the Valuation Date of reference by the percentage shown next to your Years of Service under the vesting schedule appearing in Part 5(E). You will be 100% vested in your Accrued Benefit regardless of your standing on the Plan's vesting schedule upon the occurrence of any of the following events prior to your employment termination date and while an active Participant: upon reaching your Normal Retirement Date, upon qualifying for Disability Retirement, or upon your death.

A **YEAR OF PARTICIPATION** will be credited for each Plan Year in which you were a Participant and completed at least 1,000 Hours of Service.

A **YEAR OF SERVICE** is a Plan Year in which you were credited with at least 1,000 Hours of Service.

6

## PART 4 - ELIGIBILITY FOR PLAN PARTICIPATION

If you were a Plan Participant on or before December 31, 2007, your participation in the Plan will continue until you separate from service.

No employees of the Participating Employers will be admitted to the Plan after December 31, 2007.

7

## PART 5 - PLAN BENEFITS

(A)   <u>Benefit at Normal Retirement Date</u>

If you remain a Participant until your Normal Retirement Date, you will be entitled to receive a monthly benefit equal to the <u>larger</u> of your Accrued Benefit OR your "top heavy benefit" calculated as of the <u>earlier</u> of your employment termination date or 12/31/2007.

The following provisions of the Plan were used to calculate your Accrued Benefit:

The "Normal Retirement Benefit" was equal to $1/12^{th}$ of:

1.   36.6% of your Average Annual Compensation;

     PLUS

2.   6.5% of your Excess Compensation.

The total amount calculated under 1. and 2. above was reduced $1/10^{th}$ for each Year of Service that your total Years of Service at your Normal Retirement Date is less than 10.   Years of Service prior to 1-1-93 are <u>not</u> counted.

"Annual Compensation" was the total wages paid to you by the Participating Employers for the Plan Year of reference, <u>excluding</u> compensation above $225,000 (or such other compensation limit in effect for the Plan Year of reference).

"Average Annual Compensation" was determined as of the <u>earlier</u> of your employment termination date or December 31, 2007 and is (1) the average of your Annual Compensation for your highest three consecutive Years of Service selected from the last ten years, <u>or</u> (2) the average of your Annual Compensation for <u>all</u> Years of Service if you did not complete three Years of Service.

"Excess Compensation" was the portion of your Average Annual Compensation which exceeded the social security taxable wage base in effect for the Plan Year of reference.

If the Plan is top heavy (see Part 5(E) below), your "top heavy benefit" will equal 2% of your average compensation multiplied by your Years of Participation beginning 1/1/98 (up to a maximum of 10 years).

8

**(B)   Disability Retirement**

In the event of your Total Disability while an Eligible Employee <u>and</u> Participant you will be entitled to receive your Accrued Benefit starting on your Normal Retirement Date. If you request that payment of benefits commence <u>prior</u> to your Normal Retirement Date, you will be entitled to receive your Early Retirement Benefit at any time <u>following</u> your employment termination date.

You will be considered to have a Total Disability if you suffer a physical or mental impairment which is likely to be permanent or could result in death rendering you incapable of performing your normal employment duties with the Employer. If you qualify for disability benefit payments under the Social Security Act, you will be considered to have a Total Disability. The Administrative Committee will require a written certification by a licensed physician selected by the Committee before granting disability retirement benefits.

**(C)   Deferred Retirement**

If you remain in the employ of the Employer <u>after</u> your Normal Retirement Date, you may elect to receive payment of your Normal Retirement Benefit starting on your Normal Retirement Date, <u>or</u> you may elect to defer payment until the date you actually retire.

**(D)   Death Benefit**

If your death occurs <u>before</u> you separate from service with the Employer <u>and</u> while you are an active Participant in the Plan, your beneficiary will be entitled to receive the Plan Death Benefit.

The **PLAN DEATH BENEFIT** will be equal to the lump-sum value of your Accrued Benefit <u>plus</u> the proceeds of any life insurance contracts purchased by the Trustees on your life. Any cash surrender value of a life insurance contract will be deducted from the lump-sum value of your Accrued Benefit.

If your death occurs <u>after</u> you separate from service with the Employer and <u>before</u> receiving any benefits from the Plan, your beneficiary will be entitled to receive the lump-sum value of your Vested Benefit.

If you are MARRIED at the time of your death, your Vested Benefit will <u>automatically</u> be paid to your spouse in the form of a lifetime pension UNLESS, with the written consent of your spouse, you selected another beneficiary.

You will be given a Beneficiary Form on which you must list your beneficiaries. It is advisable to review your beneficiary designation at least once a year and you should keep the Plan Administrator advised of any changes in your marital status.

(E)   **Vested Benefit**

If you separate from service with the Employer for any reason <u>other than</u> retirement or death, you will be entitled to the vested percentage of your Accrued Benefit when you attain your Normal Retirement Date.   The amount of your Vested Benefit is determined by multiplying your Accrued Benefit as of the Valuation Date by the percentage shown next to your total Years of Service under the <u>applicable</u> vesting schedule below:

| YEARS OF SERVICE | PERCENT VESTED |
|---|---|
| Less than 3 Years | 0% |
| After 3 Years | 20% |
| After 4 Years | 40% |
| After 5 Years | 60% |
| After 6 Years | 80% |
| After 7 Years | 100% |

If it is determined that the Plan is "top heavy" (as described below) for any Plan Year, the following schedule will be used to determine the amount of your Vested Benefit <u>instead</u> of the above schedule:

| YEARS OF SERVICE | PERCENT VESTED |
|---|---|
| Less than 2 Years | 0% |
| After 2 Years | 20% |
| After 3 Years | 40% |
| After 4 Years | 60% |
| After 5 Years | 80% |
| After 6 Years | 100% |

A Plan is considered "TOP HEAVY" if the total value of the Accrued Benefits of all "KEY EMPLOYEES" (certain officers/ stockholders) exceeds 60% of the value of all Accrued Benefits.   The vesting percentage indicated on your Annual Statement provided by the Committee will reflect the vesting schedule <u>in effect</u> for the Plan Year of reference.   If the Plan's status changes from top heavy to non-top heavy, your Vested Benefit <u>cannot</u> be reduced.

All Years of Service with the Participating Employers from January 1, 1975 will be counted for purposes of determining your vested percentage.

(F)   **Forfeited Benefits**

If you separate from service with the Employer and incur a Break in Service <u>before</u> you become <u>fully</u> vested in your Accrued Benefit, the non-vested portion of your Accrued   Benefit will be forfeited and applied towards satisfying the Employer's contribution required to be made on behalf of the other Participants for the Plan Year of reference.

10

## PART 6 - BENEFIT PAYMENTS

(A)   Commencement of Benefits

You do not have to file a claim for benefits upon retirement or other separation of service. The Committee will advise you of the earliest date your Vested Benefit can be distributed to you. No amounts are payable from the Plan prior to your Normal Retirement Date except in the event of your death or Disability Retirement.

Distribution of your Vested Benefit must begin after the close of the Plan Year in which occurs the later of your Normal Retirement Date or your employment termination date, unless you elect a later date.

(B)   Methods of Distribution

When you become eligible to receive your Vested Benefit, you will be permitted to elect the form in which it is to be paid. The choices include a single sum payment, purchase of an annuity contract, installment arrangements and, if eligible, a direct rollover to an IRA or another employer's qualified plan that accepts rollovers. However, if the lump-sum value of your Vested Benefit is $5,000.00 or less, the Trustee will automatically distribute it as a single sum payment.

If you are not married on the date your benefits are to begin and the lump-sum value of your Vested Benefit exceeds $5,000.00, it will automatically be paid in the form of a life annuity unless you elect, in writing, another form of payment before the life annuity payments are to begin.

If you are MARRIED on the date your benefits are to begin and the lump-sum value of your Vested Benefit exceeds $5,000.00, it will automatically be paid in the form of a Joint and 50% Survivor Annuity, unless you elect otherwise. A "Joint and 50% Survivor Annuity" provides you with a monthly pension until your death, after which your spouse will receive 50% of the original monthly amount for the rest of her (or his) life. You may elect, with the written consent of your spouse, NOT to have your Vested Benefit paid in the form of a Joint and 50% Survivor Annuity by electing another arrangement before such payments are to begin.

Additional information and Election Forms will be provided by the Committee when you or your beneficiary become eligible to receive payment of your Vested Benefit.

11

(C)    <u>Taxation of Distributions</u>

The Plan has been designed to meet Internal Revenue Service requirements for qualification and to take advantage of special tax treatment for qualified plans.  You will be taxed <u>only</u> when you actually receive benefits from the Plan.

The taxation of a Plan distribution depends on how <u>and</u> when your Vested Benefit is paid to you.  There are special Internal Revenue Service rules which may allow you to defer or reduce the amount of Federal income tax due on your distribution.  In addition to income tax, a 10% penalty tax may also be imposed on distributions you receive from the Plan <u>prior</u> to age 59 1/2.  It will be your responsibility to pay any penalty taxes that may be due as a result of a distribution from this Plan.

You or your beneficiary will be provided with information concerning the tax consequences of any distribution from the Plan <u>and</u> the Internal Revenue Service rules <u>in effect at that time.</u>  You should consult your own tax or financial advisor to determine the effect that a Plan distribution will have on your personal income tax situation and the tax consequences of such distribution.

## PART 7 - PLAN MANAGEMENT AND CLAIMS PROCEDURE

(A)  **Plan Management**

A **TRUST FUND** is maintained to receive Plan contributions from the Employer.  The Trust Fund is <u>not</u> part of the Employer or the Employer's assets.  Plan assets are used only for the purpose of providing benefits to Participants and/or their beneficiaries.

A **COMMITTEE** has been appointed by the Plan Administrator to manage the Plan and to determine all questions arising in the course of administering the Plan, such as eligibility for Plan participation, entitlement to benefits, the amount, form and time of payment of benefits.  The Committee also decides all claims for benefits and interprets the provisions of the Plan.

**TRUSTEES** are appointed to manage the Trust Fund.  They are responsible for the investment and safekeeping of Plan assets and for making payments to Participants or beneficiaries after their benefits have been approved by the Committee.

(B)  **Claims Procedure**

As a Plan Participant, you or your beneficiary do <u>not</u> have to file a claim for benefits.  However, if you feel your benefit has been incorrectly determined and you wish to request a review of that determination, you may file a written notice with any Committee Member.

The Committee will give you or your beneficiary written notice of its decision on review within 90 days of the filing of the request for review, unless special circumstances require an extension of time up to an additional 90 days.  If your claim is denied, this notice will (1) specify the reasons for denial, (2) refer to specific Plan provisions on which the denial is based, (3) describe any additional material or information necessary to perfect the claim, and (4) explain the review procedure.  You or your beneficiary may then appeal the Committee's decision by filing a written notice of appeal with the Committee within 60 days after your receipt of the notice of denial.  You or your beneficiary or any authorized representative may, before or after filing the notice of appeal, review any documents pertinent to the claim and submit issues and comments in writing.  The Committee will make its decision on the appeal within 60 days after their receipt of the appeal (unless special circumstances require an extension of time up to 120 days), and will give a written notice of its decision which specifies the reasons for its decision.  The Committee will decide whether a hearing will be held on the claim and will notify the claimant at least 14 days before the hearing, if one is to be held.

## PART 8 - MISCELLANEOUS

(A)  **Plan Amendments**

It may become necessary to amend certain parts of this Plan.  You will be notified of any significant changes made to the Plan by the Plan Administrator.  Your Vested Benefit cannot be reduced by any revisions made to the Plan.

(B)  **Plan Termination**

The Plan Administrator expects to maintain this Plan indefinitely. However, it does have the right to terminate the Plan at any time. If such Plan termination occurs, Employer contributions to the Plan will be discontinued and you will become 100% vested in your Accrued Benefit.  No further benefits will be accrued or "earned" by you.

Benefits under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) if the Plan terminates.  The PBGC guarantees most Normal Retirement Benefits, Early Retirement Benefits and certain disability and survivor's pensions.  However, the PBGC does not guarantee all types of benefits and the amount of benefit protection is subject to certain limitations.  The PBGC guarantees vested benefits at the level in effect on the date of Plan termination.  However, if the Plan has been in effect less than five years before it terminates, or if benefits have been increased within the five years before Plan termination, the entire vested benefit or the benefit increase is not guaranteed.  In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, you may call the PBGC Office of Communications at (202) 326-4000.  Written inquiries to the PBGC should be addressed as follows:

> Pension Benefit Guaranty Corporation
> Office of Communications
> 1200 'K' Street, NW
> Washington, DC  20005

**(C)   No Assignment of Plan Benefits**

Except as otherwise provided by law, your interest in the Plan either before or after retirement may not be anticipated, assigned or subject to attachment, garnishment, levy or other legal process, either voluntarily or involuntarily.  You may not transfer, use as security for a loan, or otherwise alienate your benefits under this Plan.   However,  the  Plan  Administrator  is  required  by  law  to recognize a qualified domestic relations order issued by a court that  obligates  you  to  pay  child  or  spousal  support  or  that allocates a portion of your benefits to your spouse, former spouse, child or other dependent.

## PART 9 ~ YOUR LEGAL RIGHTS

As a Participant in this Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that you are entitled to:

1. Examine, without charge, at the office of the Plan Administrator and at other designated locations, all Plan documents, including insurance contracts and copies of all documents filed by the Plan with the U.S. Department of Labor, such as annual reports and Summary Plan Descriptions.

2. Obtain copies of all Plan documents and other Plan information upon written request to the Committee. The Committee may make a reasonable charge for the copies.

3. Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish you with a copy of a Summary Annual Report (SAR).

4. Obtain once a year, a statement indicating your Accrued Benefit and the vested portion of your Accrued Benefit, or the earliest date on which your Accrued Benefit will become vested.

5. File suit in a federal court if any materials requested are not received within 30 days of your request, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. The court may require the Plan Administrator to pay you up to $100 a day until you receive the materials.

In addition to creating rights for Participants, ERISA imposes obligations upon the persons who are responsible for the operation of the Plan. These persons are referred to as "fiduciaries". Fiduciaries must act solely in the interest of the Participants and they must exercise prudence in the performance of their Plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the Plan. If the Plan fiduciaries are misusing the Plan's funds, you have a right to file suit in a federal court or request assistance from the U.S. Department of Labor. If you are successful in your lawsuit, the court may, if it so decides, require the other party to pay all legal costs, including attorney's fees.

The Plan Administrator or any other Employer participating in the Plan may not fire you or discriminate against you to prevent you from obtaining a benefit under this Plan or exercising your rights under ERISA. If you have any questions about this statement or your rights under ERISA, you should contact the Committee or the nearest office of the U.S. Labor-Management Services Administration, Department of Labor.

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ANTHONY DEBLASIO<br>Plaintiff<br><br>v.<br>CENTRAL METALS, INC.; ROMA STEEL<br>ERECTION, INC; ABC Corporation #1-100<br>(fictitious); JOHN DOE #1-100 (fictitious)<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No.:<br><br><br>Civil Action |

## CERTIFICATE OF SERVICE

I, Judith P. Rodden, Esquire, hereby certify that a true and correct copy of the defendants Central Metals, Inc.'s and Roma Steel Erection, Inc.'s Motion to Dismiss the Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), was served via regular mail postage pre-paid on the date below written on the following:

**Stephen Buividas, Esquire**
Law Offices of Stephen J. Buividas
907 Haddonfield-Berlin Road
Cherry Hill, NJ 08034
**Attorneys for Plaintiff Anthony DeBlasio**

POZZUOLO RODDEN, P.C.

Date:  September 4, 2013          BY:   /s/ Judith. P. Rodden
                                         JUDITH P. RODDEN, ESQUIRE
                                         1916 East Route 70, Suite 6
                                         Cherry Hill, New Jersey 08003
                                         Telephone: (856) 489-7730
                                         Email: judy@pozzuolo.com
                                         Attorneys for defendants Central Metals, Inc. and
                                         Roma Steel Erection, Inc.