## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ANTHONY DEBLASIO,

       Plaintiff,

     v.

CENTRAL METALS, INC. et. al,

       Defendants.

CIVIL NO. 1:13-cv-5282
(NLH/AMD)


**OPINION**

---

Appearances:

STEPHEN J. BUIVIDAS
1060 KINGS HIGHWAY NORTH
SUITE 301
CHERRY HILL, NJ 08034

*Attorney for plaintiff Anthony DeBlasio.*


JUDITH P. RODDEN
POZZUOLO RODDEN, P.C.
1916 EAST ROUTE 70
SUITE 6
CHERRY HILL, NJ 08003

*Attorney for defendants Central Metals, Inc. and Roma Steel Erection, Inc.*


**HILLMAN, District Judge**

Before the Court is the joint motion of Defendants Central Metals, Inc. and Roma Steel Erection, Inc. to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

relief can be granted.  For the reasons set forth below, the motion will be granted in part and denied in part.

## I.  Jurisdiction

The Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  The Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

## II. Background

This case arises out of Defendants' alleged refusal to provide Plaintiff with benefits to which Plaintiff claims he is entitled.  Plaintiff Anthony DeBlasio was employed by Defendants Central Metals, Inc. and Roma Steel Erection, Inc. for approximately twenty-five years.  (Pl.'s Compl. [Doc. No. 1] ¶ 6.)  According to the Complaint, while Plaintiff was employed by the Defendants, he enrolled as a participant in the "Central Metals/Roma Steel Defined Benefit Plan" ("Central Plan" or "Plan"), which was created pursuant to ERISA.  (Id. ¶¶ 7-8.)  The purpose of the Central Plan was to provide various retirement, death, and disability benefits to the Defendants' employees.  (See generally, id. Ex. 1, Summary Plan Description.)

2

At some point Plaintiff allegedly became disabled and sought to recover benefits under the Central Plan (Id. ¶¶ 12-15.)  According to Plaintiff, however, Defendants have consistently "failed and refused to pay Plaintiff the benefits which he has duly requested, and to which he is entitled pursuant to the terms of the Plan and the requirements of ERISA."  (Id. ¶ 16.)

In addition to the Central Plan, the Complaint alleges that the Defendants purchased a life insurance policy from Phoenix Home Life Mutual Insurance Company, of which Plaintiff was the insured and Plaintiff's survivors were the beneficiaries.  (Id. ¶ 20.)  Plaintiff claims that when he learned the Phoenix Policy was a "split dollar" policy,[1] he asked the Defendants to make him the sole owner of the Policy.  (Id. ¶ 21.)  However, Plaintiff complains that Defendants have repeatedly "failed and refused . . . to name [him] as sole owner of the Policy," which has prevented him from "ascertain[ing] a portion of the cash value to which he is entitled."  (Id. ¶ 24.)

---

[1] According to the Complaint, the Phoenix Policy was a "split dollar" insurance policy because "Plaintiff and Defendants each became obligated to pay a portion of the periodic premiums, and Defendants became entitled to receive reimbursement for portions of the policy and paid by Defendants in the event that the policy benefit became payable or the policy was cashed out in the interim."  (Pl.'s Compl ¶ 21.)

Based on Defendants' alleged misconduct under the Plan and the Policy, Plaintiff filed this action in the Superior Court of New Jersey, Camden County.  The Complaint contains five counts: one count for violation of the ERISA statute, and four state common law claims.  (Id. ¶¶ 30-51.)  Plaintiff's state law claims allege: "Breach of Contract," "Breach of the Covenant of Good Faith and Fair Dealing," "Intentional Infliction of Emotional Distress," and "Negligent Infliction of Emotional Distress."  (Id.)

Defendants removed the action to this Court and moved to dismissed Plaintiff's Complaint pursuant to Rule 12(b)(6). (Notice of Removal [Doc. No. 1].)  The essence of Defendants' argument is that Plaintiff has not stated an ERISA claim because he has not exhausted his administrative remedies and his state law claims are preempted by ERISA.  (Defs.' Br. [Doc. No. 4] 4-13.)  Defendants also argue that Plaintiff's breach of contract claim must be dismissed because the Complaint does not identify or allege the existence of a contract relating to ownership of the Policy.  (Id. at 13.)

**III.  Standard for Motion to Dismiss Under Rule 12(b)(6)**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as

true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for

the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig.,

6

114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion may only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(d).

**IV.  <u>Discussion</u>**

Defendants have moved to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6).  With respect to Plaintiff's ERISA claim, Defendants argue for dismissal on the basis that Plaintiff has not exhausted his administrative remedies.  Defendants further argue that Plaintiff's state law claims should be dismissed because they are preempted by ERISA.

Finally, Defendants argue that, if not preempted, Plaintiff's breach of contract claim should be dismissed because Plaintiff has not alleged the existence of a contract under which Defendant would be required to transfer ownership of the Phoenix Policy.

## A. Plaintiff's ERISA Claim and Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to state a claim under ERISA because (1) the Complaint does not sufficiently allege that Plaintiff exhausted his administrative remedies, and (2) Plaintiff actually failed to exhaust his administrative remedies. (Defs.' Br. 4-7.)  In response, Plaintiff argues that he should not have to exhaust his administrative remedies because it would be futile. (Pl.'s Opp'n 10-11).  The Court cannot accept any of these arguments.

The parties are correct that Plaintiffs generally must exhaust their administrative remedies before bringing ERISA claims unless doing so would be futile.  Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249-50 (3d Cir. 2002). However, Defendants misconstrue the burden of pleading.  Failure to exhaust administrative remedies is a non-jurisdictional affirmative defense, Metro. Life Ins. Co. v. Price, 501 F.3d 271, 280 (3d Cir. 2007), which means Defendants bear the burden of proving it.  Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d

770, 782 (3d Cir. 2007) (citing Fed. R. Civ. P. 8(c)).

Moreover, because the exhaustion requirement is an affirmative

defense, Plaintiff is not required to plead facts showing that

he exhausted his remedies.  See Thomas v. Independence Twp., 463

F.3d 285, 293 (3d Cir. 2006) (stating, in context of qualified

immunity defense, that plaintiffs are not required to plead

facts that negate affirmative defenses); See also, Hollander v.

Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citing Xechem,

Inc. v. Bristol-Meyers Squibb Co., 372 F.3d 899, 901 (7th Cir.

2004)).  As a result, the Court cannot dismiss Plaintiff's ERISA

claim on the basis that he failed to plead facts sufficient to

establish his exhaustion of administrative remedies.

     Nor can the Court dismiss Plaintiff's ERISA claim based on

Defendants' allegations that he *actually* failed to exhaust his

administrative remedies.  As stated, supra, a court reviewing a

Rule 12(b)(6) motion may only consider the facts alleged in the

pleadings, the documents attached thereto as exhibits, and

matters of judicial notice.  The Court would have to go beyond

these limited materials to determine whether Plaintiff exhausted

his administrative remedies and whether further pursuit of those

remedies would be futile.  If the Court were to consider

extraneous materials, it would have to convert the Motion into

one for summary judgment.  However, given the early stage of

this litigation and the lack of notice to the parties, it would

be wholly improper to convert the present motion into one for summary judgment.  Therefore, the Court must deny Defendants' motion to dismiss Plaintiff's ERISA claim.

**B. Preemption of Plaintiff's State Law Claims**

Defendants have moved to dismiss Plaintiff's state law claims on the basis that they are expressly preempted.  Express preemption occurs when a federal statute explicitly states that it supersedes state law.  Farina v. Nokia, Inc., 625 F.3d 97, 117 (3d Cir. 2010) (citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)).  When a state law claim is expressly preempted, it is displaced by the federal statute and must be dismissed.  In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999) (citing Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985)).

ERISA's preemption provision is contained in § 514(a), which states that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Section 514(a) covers not only state statutes and regulations, but also any common law claims, regardless of whether they were intended to affect ERISA plans and even if their effects are merely indirect.  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).  The two key issues in a § 514(a) analysis are (1) whether an employee benefit plan exists

and, (2) if so, whether the plaintiff's state law claim relates to it.

Because Plaintiff's state law claims are based on Defendants' actions under the Plan and the Policy, the Court must perform the preemption analysis for each of them.  Before reaching that analysis, however, it will be helpful to delineate which of Plaintiff's state law claims are based on the Plan, which claims are based on the Policy, and which claims are based on both.

**1. Delineation of State Law Claims**

The Complaint alleges four state law claims:  "Breach of Contract," "Breach of the Covenant of Good Faith and Fair Dealing," "Intentional Infliction of Emotional Distress," and "Negligent Infliction of Emotional Distress."  (Pl.'s Compl.)

Plaintiff's breach of contract claim is based on both the Plan and the Policy.  It specifically alleges that "Defendants, by their failure to identify and to remit to Plaintiff the amounts due and payable to him under the Plan, and by their failure to name Plaintiff as sole owner of the Policy . . . have breached their contractual obligations to Plaintiff."  (Pl.'s Compl ¶ 31.)  Furthermore, the breach of contract count requests monetary damages including "all sums due [to Plaintiff] under the Defined Benefits Plan and the Phoenix policy."  (Id. Wherefore Clause.)

11

Plaintiff's claim for breach of the covenant of good faith and fair dealing also appears to be based on both the Policy and Plan.  Plaintiff does not explicitly reference the Plan or the Policy.  However, the count for breach of the covenant of good faith and fair dealing immediately follows the breach of contract count, and it alleges that the Defendants "owed Plaintiff a duty of good faith and fair dealing in connection with the aforesaid *transactions*."  (Id. ¶ 35 (emphasis added)).  Given the proximity to the breach of contract count, the most natural reading of the phrase "aforesaid transactions" is that it refers to the Defendants' actions under the Plan and the Policy.

The claims for intentional and negligent infliction of emotional distress are based solely on the Plan.  Both claims are framed solely in reference to Defendants' failure to "inform Plaintiff of the amounts due him and [their failure] to remit said amounts."  (Id. ¶¶ 46, 50.)  These references to informing and remitting directly parallel Plaintiff's allegations with respect to the Plan.  (Id. ¶ 31.)  In contrast, Defendants' alleged misconduct relating to the Policy only extends to their failure to "name [Plaintiff] as sole owner of the Policy."  (Id. ¶ 24.)

**2. Preemption of Plaintiff's Plan-Based State Law Claims**

Plaintiff does not deny, and in fact alleges in the Complaint, that the Central Plan is an employee benefit plan governed by ERISA.  (Pl.'s Compl. ¶ 8.)  Therefore, the only issue with respect to preemption of the Plan-based claims is whether they relate to the Plan within the meaning of the statute.

ERISA does not define the term "relate to," but the Supreme Court has held that Congress intended for it to have a "broad common-sense meaning."  Ingersoll-Rand Co. v. McClendon, 489 U.S. 133, 139 (1990) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987)).  Furthermore, the Supreme Court has regularly reinforced the breadth of § 514(a) with the pronouncement that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  See, e.g., Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983).

To the extent that Plaintiff's state law claims are based on the Plan, they also "relate to" it within the meaning of § 514(a).  This case is strikingly similar to Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987).  The plaintiff in Pilot Life injured his back while working and sought to collect permanent disability benefits under a group insurance policy his employer had purchased.  Pilot Life, 481 U.S. at 43.  The defendant-insurer initially provided plaintiff's benefits, but over a

13

five-year period the insurer developed a pattern of terminating and reinstating the plaintiff's benefits.  Id.  The plaintiff filed suit alleging "Tortious Breach of Contract, Breach of Fiduciary Duties, and Fraud in the Inducement."  Id. (internal quotation marks omitted).  In light of these facts, the Court devoted only one sentence to its finding that the plaintiff's claims related to the insurance plan: "[t]he common law causes of action raised in Dedeax's complaint, *each based on alleged improper processing of a claim for benefits under an employee benefit plan*, undoubtedly meet the criteria for pre-emption under § 514(a)."  Id. at 50 (emphasis added).

Here, all of Plaintiff's Plan-based claims are predicated on Plaintiff's contention that "defendants have failed and refused to pay Plaintiff the benefits which he has duly requested, and to which he is entitled pursuant to the terms of the Plan and the requirements of ERISA."  (Pl.'s Compl. ¶ 16.) Regardless of which legal theory Plaintiff asserts, all of his Plan-based claims boil down to that one simple allegation.  For example, Plaintiff's IIED claim alleges:

> [i]n failing to inform Plaintiff of the amounts due him an in failing and refusing to remit said amounts, Defendants deliberately directed extreme and outrageous conduct toward Plaintiff, intending thereby to produce or inflict emotional distress, or acted in deliberate disregard of the high degree of probability that such emotional distress would ensue.

14

(Id. ¶ 46.)  Thus, like the claims in Pilot Life, Plaintiff's Plan-based state law claims are "each based on alleged improper processing of a claim for benefits under an employee benefit plan."

Moreover, Plaintiff does not seriously deny the clear relationship between his state law claims and the Central Plan. His only argument on that issue is a statement that the state law claims "allege conduct which is independent of ERISA because defendants themselves have utterly ignored the statute and the plan, refusing to comply with the terms of either."  (Pl.'s Br. 13.)  But this statement just underscores the strength of the connection between the Plan and Plaintiff's state law claims. It highlights the fact that Plaintiff's Plan-based state law claims are based solely on Defendants' alleged failure to comply with ERISA and the terms of an ERISA Plan.

As discussed supra, all of Plaintiff's state law claims are based, at least in Part, on the Plan.  In accordance with that analysis, Plaintiff's claims for intentional and negligent infliction of emotional distress must be dismissed entirely, and his claims for breach of contract and breach of the duty of good faith and fair dealing must be dismissed with respect to the Plan.

**3.  Preemption of Plaintiff's Policy-Based State Law Claims**

15

As stated above, the two key issues in a § 514(a) express preemption analysis are (1) whether an employee benefit plan exists and, (2) if so, whether the plaintiff's state law claim relates to it.  Plaintiff's state law claims relate to the Phoenix Policy in the same way they relate to the Plan.  They are all based on the allegation that defendants "refuse, to name [Plaintiff] as sole owner of the Policy." (Id. ¶ 24.)  The more difficult question is whether the Phoenix Policy constitutes an employee benefit plan within the meaning of ERISA.

An employee benefit plan can be either a "welfare plan," a "pension plan," or a combination of both.  29 U.S.C.A § 1002(3).  The statute defines a "welfare plan" in relevant part as any plan that is "established or maintained by an employer . . . for the purpose of providing [health, disability, or death benefits to] its participants or their beneficiaries, through the purchase of insurance or otherwise." Id. § 1002(1).  A "pension plan" is defined in relevant part as any plan that is "established or maintained by an employer" and which "provides retirement income to employees" or "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." Id. § 1002(2)(A).  Thus, the primary difference between a pension plan and a welfare plan is the type of benefit involved.  In either case, however, the

16

critical issue is whether the employer established or maintained a plan.

Determining whether a plan has been established is "'a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.'" Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992) (quoting Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990)). The essence of this inquiry is to discern an intent by the employer "'to provide benefits on a regular and long term basis.'" Id. at 209 (quoting Wickman, 908 F.2d at 1083). The Third Circuit has adopted the widely-known test, established by the Eleventh Circuit, which holds that a plan exists if "a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." Id. (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)).

Unlike the Plan, neither party has provided a copy of the Policy or any documents relating to it. As a result, the Court may only properly consider the Complaint's allegations to determine if the Policy is an employee benefit plan. The only allegations in the Complaint relating to the substance of the Policy are as follows:

17

> While Plaintiff was in Defendants' employ, Defendants
> procured a policy of life insurance through Phoenix
> Home Life Mutual Insurance Company . . . Plaintiff was
> the named insured under said policy, and his survivors
> were the designated beneficiaries.  The face amount of
> the policy, which remains in effect, is $100,000.00 .
> . . At some point, Plaintiff was made aware that the
> Phoenix policy was a so-called "split dollar
> insurance" policy, by the terms of which Plaintiff and
> Defendants each became obligated to pay a portion of
> the periodic premiums, and Defendants became entitled
> to receive reimbursement for portions of the policy
> paid by Defendants in the event that the policy
> benefit became payable or the policy was cashed out in
> the interim . . . Plaintiff has paid in excess of
> $7000.00 in premiums since the inception of the policy
> in order to maintain the policy in effect.

(Pl.'s Compl. [Doc. No. 1] ¶¶ 20-22.)

Based on these limited allegations, the Court cannot

complete the detailed inquiry necessary to conclude that the

Policy constitutes an employee benefit plan within the meaning

of ERISA.  The most obvious deficiency is that the allegations

are silent with respect to the procedures for receiving

benefits.

More importantly, however, the allegations fall woefully

short of establishing the employer's intent to provide "benefits

on a regular and long term basis."  Information relating to the

employer's involvement, such as the extent of its practice of

providing life insurance for its employees, must be pled or

provided.  See Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th

Cir. 1982) (purchase of insurance in itself does not

conclusively establish a plan, but purchase of a group policy is

18

"substantial evidence"); see also, Anderson v. UNUM Provident Corp., 369 F.3d 1257, 1263 (11th Cir. 2004) (extent of employer's involvement in administering plan determines whether employer actually *established or maintained* the plan).  In short, the Court cannot determine based on the Complaint alone whether the Policy constitutes an ERISA plan.  At a minimum, the Court must have the Policy itself.

The consequences of this failure must be borne by Defendants.  Preemption, like exhaustion, is an affirmative defense.  See Sultan v. Lincoln Nat. Corp., 2006 WL 1806463, *13 (D.N.J.) (citing Dueringer v. Gen. Am. Life Ins. Co., 842 F.2d 127, 130 (5th Cir. 1988); Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1497 (9th Cir. 1986); Rehabilitation Inst. v. Equitable Life Assurance Soc., 131 F.R.D. 99, 101 (W.D. Pa. 1990)).  As a result, Defendants bear the burden of proof; Plaintiff is not required to plead around ERISA.  Accordingly, the Court cannot dismiss Plaintiff's state law claims, insofar as they are based on the Policy, on the basis of express preemption.[2]

---

[2] Defendants also argue that Plaintiff's Policy-based claims are barred under the doctrine of complete preemption.  However, Defendant's complete preemption argument suffers from the same fatal flaw as its express preemption argument.  A necessary element of establishing complete preemption under ERISA is that the Plaintiff must be able to bring the allegedly-preempted claim under § 502(a)(1)(B).  See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  Section 502(a)(1)(B),

**C. Breach of Contract and the Policy**

Defendants argue that, even if Plaintiff's breach of contract claim is not preempted, it must be dismissed because Plaintiff has not alleged the existence of a contract that would require Defendants to transfer ownership of the Policy. The Court agrees with Defendants.

All the Complaint alleges is that Defendants purchased the Policy and that they have failed to transfer ownership of the Policy to Plaintiff. (Pl.'s Compl. 20-24.) The Complaint implies that Defendants are contractually obligated to transfer ownership of the policy upon Plaintiff's request, but Plaintiff has not indicated where this alleged contractual obligation comes from. Simply alleging that a Defendant breached a contract without identifying the source of the contractual obligation does not raise a plausible claim for relief.

Therefore, Plaintiff's breach of contract claim must be dismissed in its entirety since it does not raise a plausible

---

however, authorizes claims brought pursuant to "the plan." 29 U.S.C.A. § 1132(a)(1)(B). Thus, to establish that Plaintiff's state law claims are completely preempted, Defendants would have to show that the claims were brought pursuant to an ERISA plan. As the Court has noted, Defendants have not met this burden with respect to the Policy. Furthermore, complete preemption is not relevant in this case as it is a jurisdictional doctrine that confers federal question jurisdiction over claims that would otherwise fail to satisfy the well-pleaded complaint rule. See, e.g., In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999).

claim with respect to the Policy and it is preempted with respect to the Plan.

## V.   <u>Conclusion</u>

For the foregoing reasons Defendants' Motion to Dismiss Plaintiff's Complaint shall be granted in part and denied in part.  Plaintiff's claims for breach of contract, negligent infliction of emotional distress, and intentional infliction of emotional distress will be dismissed entirely; Plaintiff's claim for breach of the covenant of good faith and fair dealing will be dismissed insofar as it is based on the Plan, but may proceed with respect to the Policy; and Plaintiff may proceed on his ERISA claim.[3]


                                        _s/ Noel L. Hillman_____
                                        NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

_____

[3] Plaintiff has requested leave to amend his Complaint in the event of dismissal, and the Court sees no reason to deny the request.  "[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  Defendants have not argued against Plaintiff's request for leave to amend.  Furthermore, the Court has no basis to conclude that an amendment would be futile or inequitable, particularly if the Plaintiff wishes to amend his ERISA claim in accordance with this opinion.